**DOW, LOHNES & ALBERTSON, Plaintiff,**

v.

**PRESIDENTIAL COMMISSION ON BROADCASTING TO CUBA, et al., Defendants.**

**Civ. A. No. 82–0929.**

United States District Court, District of Columbia.

Jan. 23, 1984.

Leslie H. Wiesenfelder, Dow, Lohnes & Albertson, Washington, D.C., for plaintiff.

Robert E.L. Eaton, Jr., Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 to compel production of documents relating to radio broadcasting to Cuba. Defendants Presidential Commission on Broadcasting to Cuba ("Commission") and National Telecommunications and Information Administration ("NTIA") have withheld 47 documents in whole or in part, claiming the protection of various

FOIA exemptions, the attorney-client privilege and the attorney work-product privilege, to justify nondisclosure. Currently before the Court are the cross motions of plaintiff and defendants for summary judgment.

Plaintiff's FOIA request, which was submitted to both defendants in March of 1982, sought disclosure of material relating to:

1. Radio broadcasting to Cuba;

2. The establishment of and/or proposals to establish a facility for broadcasting to Cuba, including, but not limited to, a facility popularly known as "Radio Marti";

3. The assignment of a frequency in either the government or non-government spectrum for broadcasting to Cuba. This would include, but not be limited to, all studies on frequency searches, analyses and assignments for broadcasting to Cuba and/or the extent of potential interference to non-government broadcast stations in the United States by broadcasting to Cuba and/or Cuban measures to jam or otherwise counter such broadcasts;

4. All studies relating to the likelihood or capacity of Cuba to cause interference to a United States Government station broadcasting to Cuba;

5. All studies relating to the likelihood or capacity of Cuba to cause interference to non-government broadcasting stations in the United States;

6. The use of Radio Marathon, a Voice of America operated broadcasting facility located in Florida, for broadcasting to Cuba. This would include, but not be limited to, studies prepared in the late 1950's and/or the early 1960's, concerning broadcasting to Cuba on Radio Marathon;

7. The number of TV, AM, FM and short wave receivers in Cuba;

8. The extent and quality of reception in Cuba of United States TV, AM, FM and shortwave broadcasts; and

9. Minutes of the closed meeting of the Presidential Commission on Broadcasting to Cuba held Tuesday, March 2, 1982, and the minutes of all other closed meetings held at any other time.

In response to that request, both defendants made substantial disclosures to plaintiff, but withheld all or part of 47 documents (32 of defendant Commission and 15 of defendant NTIA), asserting the applicability of FOIA Exemptions (b)(1) (the national security exemption), (b)(5) (the deliberative process privilege) and/or (b)(3) (applicable to material specifically exempted from disclosure by certain other statutes). Defendant NTIA also asserts that the attorney-client privilege and the work-product privilege shield one document from plaintiff's FOIA request. To support their claims of exemption and privilege, defendants have submitted the declaration of Frank M. Machak of the Foreign Affairs Information Management Center of the Department of State which processed plaintiff's FOIA request, the affidavit of Thomas W. Ainsworth, the official directly responsible for the review of Department of State documents pursuant to FOIA ("Ainsworth Affidavit") and the affidavit and supplement of Richard H. Shay, chief counsel and FOIA officer for defendant NTIA ("Shay Affidavit", "Supplemental Shay Affidavit"). The latter three provide a brief description of each document at issue and detail defendants' specific objections to disclosure, and constitute defendants' *Vaughn* indices. See *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). There has been no *in camera* inspection of the materials at issue.

Plaintiff challenges defendants' application of the privilege and FOIA exemptions and further contends that the contents of many of the documents at issue have been previously disclosed and therefore do not warrant the protection of FOIA exemptions. This argument and the asserted grounds for nondisclosure will be discussed individually below.

*The (b)(5) Exemption*

Defendants assert that Exemption (b)(5) justifies the non-disclosure of all

or part of 41 documents.[1] This exemption permits withholding of "inter-agency or intra-agency memorandums or letters which would not be available to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The primary purpose of this deliberative process privilege is to permit agency decisionmakers to "engage in that frank exchange of opinions and recommendations necessary to the formulation of policy without being inhibited by fear of later public disclosure". *Paisley v. Central Intelligence Agency,* 712 F.2d 686, 698 (D.C.Cir.1983), vacated in part on rehearing at 724 F.2d 201 (D.C.Cir.1984); see also *Murphy v. Tennessee Valley Authority,* 571 F.Supp. 502, 504 (D.D.C.1983). To warrant protection under (b)(5), documents must be both predecisional and deliberative in nature; that is, they must be generated as part of a definable decisionmaking process that results in a final agency decision and they must reflect the "give-and-take" flow of opinions, recommendations or advice between the policymakers formulating that decision. *Paisley* at 698; *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854 (D.C.Cir.1980). Documents which implement an established policy do not fall within the exemption, *Jordan v. Department of Justice,* 591 F.2d 753, 774 (D.C.Cir.1978), nor do documents which have been accorded authoritative or precedential weight by the agency. *Schlefer v. United States,* 702 F.2d 233, 237 (D.C.Cir.1983).

■ The agency asserting a (b)(5) claim of exemption bears the burden of demonstrating that the subject documents are predecisional and deliberative. *Schlefer v. United States,* 702 F.2d at 237; *Vaughn v. Rosen,* 523 F.2d 1136, 1144 (D.C.Cir.1975). Affiants Ainsworth and Shay attempt to do so by stating that the information withheld under a (b)(5) claim reflects communications and internal deliberations preparatory to the formulation of policy regarding various aspects of the Radio Marti project. Examples of information withheld include recommendations of a subordinate official to the Assistant Secretary for American Republic Affairs (ARA) as to courses of action with Congress to achieve legislation authorizing Radio Marti (C–17), judgments and recommendations concerning congressional attitudes contained in a briefing memorandum advising the Assistant Secretary for ARA of matters concerning Radio Marti in preparation for congressional hearings on the project (C–53), and NTIA briefing notes discussing proposed U.S. Government plans in activating "Radio Free Cuba" (S–5).

Plaintiff argues that none of the materials at issue satisfies the predecisional requirement of Exemption 5. In plaintiff's view, the relevant "agency decision" for (b)(5) purposes was the National Security Council's decision to pursue radio broadcasting to Cuba, which was announced on June 4, 1981. According to plaintiff's theory, all subsequent discussions and planning as to technical aspects of Radio Marti, funding decisions, legislative strategy and the like concern implementation of the June, 1981 decision rather than formulation of policy in its own right.

Plaintiff's premise will not withstand analysis. A decision to "pursue" radio broadcasting is, in effect, a decision to make more decisions. The governmental objective announced in June of 1981 was broadly stated and ill-defined, raising numerous issues for later resolution. These issues, including the choice of broadcast frequency, potential funding sources to be investigated,[2] and courses of action on Cap-

1. These documents are numbered C–6, C–11, C–12, C–13, C–14, C–17, C–27, C–30, C–34, C–37, C–38, C–46, C–50, C–52, C–53, C–60, C–61, C–62, C–109, C–110, C–120, C–123, C–124, C–125, C–126, C–128, H–1, H–2, H–3, H–4, H–5, H–6, H–7, H–8, S–1, S–2, S–4, S–5, S–6, S–7, and S–8.

2. Plaintiff's reliance on *Sierra Club v. Morton,* 395 F.Supp. 1187, 1191 (D.D.C.1975), for the proposition that funding issues are not predecisional is unconvincing, as that case involved "appropriation proposals ... made after the budget decision has been made or the policy already adopted." The preliminary investigations into possible funding sources at issue here do not fall within the limited scope of that holding.

itol Hill were not mere details to be worked out but rather matters requiring further study and generating debate which culminated in the making of new policy. The "predecisional" requirement of the (b)(5) exemption is satisfied.

Plaintiff also disputes that disclosure of the documents at issue would reveal the "deliberative" process protected by Exemption 5. Although defendant has difficulty separating this discussion from the one preceding,[3] the point is made that given the subject matter of the documents at issue, it is likely that defendants may have withheld purely factual material which can be severed from any advice, conclusions or recommendations contained in the undisclosed documents. Such information would not be protected from disclosure under Exemption 5. *ITT World Communications, Inc. v. F.C.C.*, 699 F.2d 1219, 1236 (D.C.Cir.1983). Whether plaintiff's suspicions are correct cannot be determined from the public record currently before the Court. Only by inspection of the materials withheld under (b)(5) can it be established that defendants did or did not properly apply that exemption, and accordingly, defendants shall be directed to provide those excised materials to the Court for an *in camera* review.

*The (b)(1) Exemption*

Under Exemption (b)(1), an agency may withhold documents only if they apply to matters which are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).

Defendant Commission claims that this exemption justifies nondisclosure of part or all of 13 documents sought by plaintiff, all of which have been classified under Section

1.3 of Executive Order No. 12356, 47 Fed. Reg. 14874 (Apr. 6, 1982) and the applicable State Department regulations at 22 C.F.R. 9, 12.[4] In pertinent part, Section 1.3(a) states that "information shall be considered for classification if it concerns: ... (3) foreign government information; (4) ... intelligence activities (including special activities), or intelligence sources or methods; (5) foreign relations or foreign activities of the United States." Section 1.3(b) further states that information concerning one or more of the categories set forth in part (a) "shall be classified when an original classification authority also determines that its unauthorized disclosure, either by itself or in the context of other information, reasonably could be expected to cause damage to national security." Section 1.3(c) states that "unauthorized disclosure of foreign government information, the identity of a confidential foreign source, or intelligence sources or methods, is presumed to cause damage to the national security."

Defendant NTIA asserts exemption (b)(1) as one basis for nondisclosure of four documents requested by plaintiff, each of which has also been classified under Executive Order No. 12356.[5]

In assessing an agency's application of the (b)(1) exemption, this Court must consider *de novo* the propriety of the withholding, *Gardels v. Central Intelligence Agency*, 689 F.2d 1100, 1104 (D.C.Cir.1982); *Jaffe v. Central Intelligence Agency*, 573 F.Supp. 377, 383 (D.D.C.1983). The burden of proof is on the agency to sustain its claim to the exemption, 5 U.S.C. § 552(a)(4)(B), but in national security cases the Court is to accord "substantial" weight to the agency's determinations as set forth in affidavits. *Gardels*, 689 F.2d at 1104; *American Civil Liberties Union of New Jersey v. Dep't of Justice*, 548

---

**3.** For example, plaintiff's assertion that "the consultative give-and-take process applies to the formulation of policy, not to the formulation of implementation of policy" (Plaintiff's Points and Authorities in Support of Motion for Summary Judgment at 8) addresses the "predecisional" prong, not the "deliberative" prong of the Exemption 5 inquiry.

**4.** These documents are identified as C–4, C–6, C–17, C–29, C–34, C–38, C–46, C–109, C–110, C–113, C–115, C–117 and C–119.

**5.** These documents are labeled S–1, S–2, S–4 and S–5.

F.Supp. 219, 222 (D.D.C.1982). If the Court is able to make a responsible *de novo* determination on the claims of exemption on the basis of the public record, *in camera* review is neither necessary nor appropriate. *Hayden v. National Security Agency*, 608 F.2d 1381, 1387 (D.C.Cir.1979); *American Civil Liberties Union of New Jersey v. Dep't of Justice*, 548 F.Supp. at 222.[6] Plaintiff does not dispute that the proper procedures were followed in classifying the documents; therefore, if the affidavits demonstrate that the items meet the substantive criteria for classification under Executive Order No. 12356, that is, if disclosure of the documents could reasonably be expected to cause damage to national security, and if the affidavits contain reasonable specificity of detail and are not called into question by contradictory evidence of agency bad faith, summary judgment may be granted. *Gardels*, 689 F.2d at 1105; *Halperin v. Central Intelligence Agency*, 629 F.2d 144, 148 (D.C.Cir.1980).

The information withheld by defendants under Exemption (b)(1) can be divided into two categories: that which would raise a presumption of damage to the national security under Section 1.3(c) of Executive Order No. 12356, and that which would not. The first category encompasses "foreign government information" and the identity of confidential foreign sources, intelligence sources and intelligence methods. The Ainsworth Affidavit asserts that material excised from documents C–38 and C–46 corresponds to information received from intelligence sources and that C–4, C–113, C–117 and C–119 contain information conveyed in confidence by a foreign government. Plaintiff has neither rebutted the presumption which follows nor raised the specter of agency bad faith, and therefore, with respect to those deletions, defendants shall be granted summary judgment of their (b)(1) claims. Compare *Carlisle Tire*

*& Rubber Co. v. U.S. Customs Service*, 663 F.2d 210, 216–19 (D.C.Cir.1980).

The remaining documents include internal agency Department memoranda discussing plans for Radio Marti operations (C–6), legislative status and strategy relating to Radio Marti (C–17, C–29), technical and foreign affairs matters relating to Radio Marti transmission (C–34), interagency reports on radio broadcasting to Cuba (C–109, C–110), a telegram from the U.S. Interests Section at Havana (the U.S. Government representative organization) containing recommendations concerning the decision to establish a facility for broadcasting to Cuba (C–115), and assessments of the impact on U.S. interests (U.S. broadcasters and Cuba) of publishing a particular proposed Executive order (S–1, S–2, S–4, S–5). These documents concern "foreign relations", one of the categories for classification under Executive Order No. 12356, but they do not raise a presumption of damage to the national security. Defendants must therefore carry the burden of proving such damage if their (b)(1) claims are to succeed. Defendants assert that disclosure of these documents would facilitate Cuban countermeasures in response to Radio Marti (C–6, C–17, C–29, C–34, C–38, C–109, C–110) and/or reveal to the Cubans sensitive expressions of opinion and analysis regarding U.S. foreign relations with Cuba (C–115, S–1, S–2, S–4, S–5). Briefly summarized, plaintiff's arguments in response are that the excised information addresses details of the project which do not rise to the level of a national security risk, that U.S. foreign policy will not be measurably affected by whether or not the Radio Marti project advances as it is likely (according to plaintiff) that entertainment, music and sports will dominate the programming, that any adverse effects of Cuban countermeasures would be on uninformed Cubans and the

---

**6.** Factors relevant to this inquiry include the "judicial economy" of conducting *in camera* inspection, the presence of bad faith on the part of the agency, the conclusory nature of agency affidavits, the public interest in disclosure and the posture of the party proposing *in camera* review. *Allen v. Central Intelligence Agency*, 636

F.2d 1287, 1298–99 (D.C.Cir.1980). This is not a case in which *in camera* inspection is "plainly necessary" as there is no showing of bad faith, the affidavits submitted sufficiently describe the information withheld and the grounds for nondisclosure, and the agency has not proposed *in camera* review.

commercial radio stations receiving interference rather than on U.S. security, and that the danger of facilitating Cuban countermeasures is of little consequence, as Cuba has already demonstrated its ability to jam the frequency to which Radio Marti was at one time tentatively assigned.[7] Plaintiff also raises the issue of prior disclosure, which will be discussed separately below.

Plaintiff's arguments fail to undermine defendants' position that release of the subject documents could reasonably be expected to cause damage to the national security. Defendants understandably take a broader view of national security than does plaintiff, but one need not stretch the definition of that term to conclude that disclosure of the information described by affiant Ainsworth may well constitute a risk to U.S. security. That the *unexcised* portions of some of the documents at issue deal with mundane details proves nothing: their innocuous content explains their release but sheds no light on the nature of the excised portions. Furthermore, it is unlikely that Radio Marti's programming content will negate the impact of the project on U.S./Cuban foreign relations. On the contrary, the State Department document upon which plaintiff relies in making that assertion reveals that although feature programs might be included to provide broad-based appeal, the primary thrust of Radio Marti will be to present news and information, focusing on "the government's mismanagement of domestic affairs and its promotion of subversion and terrorism abroad while, at the same time, underscoring the high cost this imposes on the living standards of all Cubans." (Plaintiff's Exh. K at 13–14). Whether or not one supports that objective, it is undeniably a matter of foreign policy. It is likewise undeniable that the impact of transmission interference will be felt not only in Cuba and the private sector of American broadcasting but also in the U.S. foreign relations. Finally, plaintiff's argument that "Cuba knows how to jam" radio transmissions and has done so in the past does not undermine defendants' claim that, in the interests of national security, the technical details of Radio Marti should not be made public. Plaintiff in effect concedes that defendants' fears of countermeasures are real and well-founded, not merely the product of paranoid speculation on the part of government officials. Whether release of the particular information contained in these documents would add to the technical know-how of would-be interferors is uncertain, but the defendants are justified in resolving any doubt on the side of national security interests.

In sum, each of the claims of Exemption (b)(1) raised by defendants and particularized in the Ainsworth Affidavit and Supplemental Shay Affidavit is properly asserted. The classification of the subject materials under Executive Order No. 12356 was procedurally correct and warranted by the substance of the documents. Accordingly, summary judgment of defendant Commission's (b)(1) claims shall be granted.

### The (b)(3) Exemption

Exemption (b)(3) shields that information specifically exempted from disclosure by certain statutes. This exemption is invoked here with reference to only one document, C–46, from which defendant Commission has excised information received from the Central Intelligence Agency as well as the names of two CIA employees. Defendant Commission contends that 50 U.S.C. § 403g protects this information from disclosure and thus brings it within the scope of Exemption (b)(3). Plaintiff does not contest defendant's deletion of the names of the CIA employees. The remainder of the information at issue has already been found exempt from disclosure under (b)(1) and therefore, defendant's claims under (b)(3) need not be addressed.

### Prior Disclosure

Plaintiff asserts that various of the documents withheld by defendant Commission and defendant NTIA do not warrant the

---

7. The radio frequency assigned to Radio Marti has since been changed.

protection of FOIA exemptions because they have been subject to prior disclosure.

With respect to documents C–6, C–34, C–38, C–109, H–1, H–3, H–6, H–7, H–8, S–1, S–2 and S–4, although plaintiff asserts that the information contained therein has been released to the public in the course of congressional hearings and defendants' own information releases, plaintiff fails to demonstrate that the withheld information has already been *specifically* revealed to the public as required under *Afshar v. Department of State,* 702 F.2d 1125, 1133 (D.C.Cir.1983); see also *Lamont v. Department of Justice,* 475 F.Supp. 761, 772 (S.D. N.Y.1979). Plaintiff makes general assertions, such as that facility design plans have been publicly discussed, or that some assessments of the possible impact on U.S. interests of radio broadcasting to Cuba have been released, but not that the particular discussions recorded in the documents sought by plaintiff have become public knowledge. Unless plaintiff can demonstrate that specific information in the public domain appears to duplicate that being withheld, it has failed to bear its burden of showing prior disclosure. See *Afshar* at 1130.

Plaintiff maintains that disclosure of the contents of document C–4 occurred in March, 1982 when a State Department official permitted members or representatives of plaintiff's office to view the document, and plaintiff relies on *Cooper v. Internal Revenue Service,* 450 F.Supp. 752, 753 (D.D.C.1977) in arguing that FOIA exemptions therefore no longer apply. That reliance elastizes *Cooper* too generously. In *Cooper,* the Court held that once certain tax records had been released to the Tax Court and opened to public inspection, they could not regain their confidential nature when returned to the IRS and thus were not subject to the exemptions of FOIA. The circumstances of the C–4 disclosure, as related by plaintiff, are not comparable. Although the State Department official permitted plaintiff's representatives to read the document, he did not allow them to make a photocopy. At most, the official intended a limited disclosure to a small group of people (which would hardly inhibit candid agency decisionmaking), not a general public inspection. If the subject portions of C–4 are found to be predecisional and deliberative, this limited disclosure will not strip the document of (b)(5) protection.

*Attorney-Client Privilege and Attorney Work-Product Privilege*

■ Defendant NTIA asserts that under the attorney-client privilege and the attorney work-product privilege, document H–4 is exempt from disclosure. Defendant bears the burden of demonstrating that this document falls within the attorney-client privilege, *Schlefer v. United States,* 702 F.2d 233, 237 (D.C.Cir.1983); however, the facts asserted in the Shay Affidavit and Supplement thereto do not make that showing. According to affiant Shay, document H–4 is a memorandum addressing the legal ramifications of frequency assignment for the Radio Marti project. It was prepared by a staff attorney at affiant Shay's direction in response to the request of the Assistant Secretary. Defendant asserts that because H–4 was generated by an attorney and contains advice to the client with the understanding that it would remain confidential, it qualifies for protection under the attorney-client privilege. However, even in response to the pointed challenges of plaintiff, defendant has not stated that the information contained in H–4 was never shared with third parties. That the document was prepared and received with an understanding of confidentiality will not suffice: confidentiality must have been maintained, or the claim of privilege is lost. *Permian Corp. v. United States,* 665 F.2d 1214, 1219 (D.C.Cir.1981); *Mead Data Central, Inc. v. United States Department of the Air Force,* 566 F.2d 242, 253 (D.C.Cir.1977). Lacking assurance that the contents of H–4 were not shared with third parties, the Court cannot uphold defendant's assertion of the attorney-client privilege here.

■ Defendant NTIA also asserts that because document H–4 "sets forth the attorney's theory of the case, litigation strat-

egy, and recommends a possible course of action by NTIA in the face of potential litigation" (Shay Supp. Aff. at ¶ 17), the attorney work-product privilege is applicable and justifies nondisclosure. Plaintiff makes no response to this argument, perhaps recognizing that unlike the attorney-client privilege, the work-product privilege does not rest upon a foundation of confidentiality and can survive some voluntary disclosure to third parties. See *Permian Corp. v. United States*, 665 F.2d at 1219, *United States v. AT & T*, 642 F.2d 1285, 1299 (D.C.Cir.1980). Furthermore, if the subject material is properly classified as work-product under Exemption 5, it is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared. *F.T.C. v. Grolier, Inc.*, 462 U.S. 19, 103 S.Ct. 2209, 2215, 76 L.Ed.2d 387 (1983). Therefore, the success of defendant's claim depends wholly on whether document H-4 is in fact "work product"; that is, "material prepared in anticipation of litigation or for trial." Fed. R.Civ.P. 26(b)(3). Based on the uncontroverted statement of affiant Shay that H-4 contains "litigation strategy" and recommends a course of action in the event that litigation should arise, it may fairly be called work product, and is accordingly privileged against disclosure.

In accordance with the findings and conclusions of this Memorandum Opinion, it is, by the Court, this 20th day of January, 1984

ORDERED that the motion of plaintiff Dow, Lohnes & Albertson for summary judgment be, and it hereby is denied; and it is further

ORDERED that the motion of defendants for summary judgment be and it hereby is granted with respect to those claims of exemption asserted under 5 U.S.C. § 552(b)(1), and it is further

ORDERED that the motion of defendant NTIA for summary judgment based on the attorney work-product privilege with respect to document H-4 be and it hereby is granted, and it is further

ORDERED that in all other respects, the motion of defendants for summary judgment be, and it hereby is, denied; and it is further

ORDERED that by February 6, 1984 defendants provide to the Court for *in camera* review the complete text of those documents as to which claims of exemption are asserted under 5 U.S.C. § 552(b)(5), highlighting or otherwise identifying those portions already disclosed to plaintiff.