AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES,
LOCAL 2782, Plaintiff,

v.

UNITED STATES DEPARTMENT OF
COMMERCE, Defendant.

Civ. A. No. 84–1352.

United States District Court,
District of Columbia.

April 9, 1986.

Sheldon Cohen, Arlington, Va., for plaintiff.

Mary Coster Williams, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

Plaintiff American Federation of Government Employees, Local 2782 ("AFGE" or "Union"), the collective bargaining representative of employees of defendant's Bureau of the Census ("Bureau"), brings this suit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to obtain the release of documents it believes will con-

firm its suspicions that the Bureau has engaged in the illegal practice of "preselecting" certain employees for promotion.[1] The Bureau contends that some materials it has withheld are exempt from disclosure under 5 U.S.C. § 552(b)(2), (b)(5), and (b)(6) (Exemptions 2, 5, and 6), and that others are not "agency records" subject to disclosure at all within the meaning of FOIA. The Bureau also justifies its refusal to carry out three searches it was asked to make for responsive materials—two on the ground that the requests were prohibitively broad and ambiguous, and, in the third case, because its search fee was not tendered. Upon consideration of the parties' cross-motions for summary judgment, the Court concludes that defendant properly withheld the disputed documents and justifiably declined to conduct the searches requested, and will, therefore, grant defendant's, and deny plaintiff's, motion for summary judgment.

## I.

The material facts are not in dispute. In December, 1983, AFGE filed a number of FOIA requests with the Bureau (now grouped for purposes of this case as Appeals Nos. 1, 2, and 3) for documents which could substantiate its suspicions of pervasive "preselection" of individual employees for promotion in contravention of the Bureau's established Merit Assignment Program.[2]

Appeal No. 1 involves a request of December 19, 1983, for the contents of seven notebooks, kept in the Administrative Office of the Population Division of the Bureau, containing papers bearing upon Division-initiated requests for personnel actions, including promotions, the most important of which appear to be duplicate copies of "Requests for Personnel Action," known as Standard Form 52's ("SF–52's") for the fiscal years 1981–84.[3] Plaintiff filed an administrative appeal of the Bureau's initial denial of the request in January, 1984, and a final decision was rendered the following May, by which the Bureau released some of the material, and claimed exemptions for the remainder under 5 U.S.C. § 552(b)(5) and (b)(6).

Appeal No. 2 consolidated the Union's requests of December 2 and December 10, 1983, seeking records, notes, or memoranda requesting, recommending, or urging the promotion of employees in certain branches of the Bureau's Population Division. The Bureau initially denied those requests without a search on the ground that any such records, if found, would fall within FOIA Exemptions 5 and 6. During the processing of AFGE's administrative appeal, however, the General Counsel of the Department of Commerce did order that a search for responsive documents be made in nine branches of the Population Division, which turned up some 117 promotion recommendations and one SF–52 seeming to conform to the requests. All were, as anticipated, denied to plaintiff under Exemptions 5 and 6.

Appeal No. 3 involves a request filed December 20, 1983, for the Union to be allowed to "inspect" the following materials:

1. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

2. Plaintiff conjectures that defendant's reluctance to release the documents reflects an awareness that they will reveal that Bureau officials improperly "nominate" individuals to fill the positions they create. It bases its suspicions on various complaints of preselection lodged with it by Bureau employees. The affidavit of a past president of Local 2782 asserts that the Union filed a grievance in November, 1983, on the basis of a copy of a memorandum it was shown recommending the promotion of someone to fill a particular vacancy. The past presi-

dent states that he personally applied for the vacancy in question, and goes on to surmise that, in reaction to the filing of the grievance, the Bureau cancelled the vacancy rather than risk exposure of its illegal practices. Several other Union-filed grievances were rejected by the Bureau in the absence of supporting evidence, and plaintiff hopes to obtain such evidence by way of this lawsuit.

3. The notebooks also contain draft position descriptions and ranking factor statements, transmittal slips, employee clearance forms, leave requests, and medical statements.

A. Every chronological office file and correspondence file, internal and external, for every branch office, staff office, assistant division chief office, division chief office, assistant director's office, associate director's office, deputy director's office, and director's office;

B. Every division or staff administrative office file in the Bureau which records, catalogues, or stores SF–52's or stores promotion recommendation memos, or both; and

C. Every memo recommending promotion of any employee during FY 82 and FY 83 found or known to any branch chief or higher level supervisor employed at the Bureau.

Defendant responded on January 20, 1984, that requests (A) and (B) were too encompassing, and that more particularity of identification, including a finite time period, should be provided. The documents sought by request (C) were denied on the basis of Exemptions 5 and 6, but on appeal, the General Counsel again directed that a search be made, conditioned, however, upon AFGE's advance payment of a search fee of $3,560. The Union declined to pay the fee and no search was ever conducted. The General Counsel affirmed the Bureau's original decision that requests (A) and (B) were so excessive as to obviate any duty to search, with or without a fee.

## II.

*Appeals Nos. 1 and 2*

FOIA Exemption 5 permits the withholding of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency ..." 5 U.S.C. § 552(b)(5). The provision has general reference to the rules of civil discovery under the Federal Rules of Civil Procedure, but, as applied to the government, has been held to recognize various so-called "governmental privileges," including the "deliberative process" privilege. *EPA v. Mink,* 410 U.S. 73, 89, 93 S.Ct. 827, 837, 35 L.Ed.2d 119 (1973); *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 866

(D.C.Cir.1980); *Jordan v. Department of Justice,* 591 F.2d 753, 772–74 (D.C.Cir.1978) (en banc).

 It is the deliberative process privilege upon which the defendant primarily relies to justify its refusal to give the Union what it wants here, and the primary purpose of the deliberative process privilege is to enable governmental decisionmakers "to engage in that frank exchange of opinions and recommendations necessary to the formulation of policy without being inhibited by fear of later public disclosure." *Paisley v. CIA,* 712 F.2d 686, 697–98 (D.C.Cir.1983) (citations omitted). It also serves to protect the public from the confusion (or worse) which might ensue if agency ruminations, or hypothetical or alternative bases for action not, in fact, officially approved were revealed prematurely. *Jordan,* 591 F.2d at 772–73; *Coastal States,* 617 F.2d at 866. The prerequisites for invocation of the deliberative process privilege have been clearly enunciated by the Court of Appeals for this Circuit:

> In deciding whether a document should be protected by the privilege we look to whether the document is "predecisional" —whether it was generated *before* the adoption of an agency policy—and whether the document is "deliberative"— whether it reflects the give-and-take of the consultative process.... [E]ven if [a] document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public.

*Coastal States,* 617 F.2d at 866 (emphasis in original). An agency invoking the privilege bears the burden of establishing that documents it withholds are truly of a "deliberative" character, and the specific role the materials play in the process must be articulated with reasonable precision. *Paisley,* 712 F.2d at 698 (citing *Coastal States,* 617 F.2d at 868). A reviewing court must consider such factors as whether the documents were composed by a subordinate for use by a superior who actually makes the decision, *Coastal States,* 617

F.2d at 868, and whether they purport to express the opinions or recommendations of the author alone or speak authoritatively for the agency.

AFGE suggests two bases upon which the promotion materials—SF–52's, draft position descriptions, ranking factor lists, recommendations, and the like—must be regarded as without the deliberative process and, thus, not properly withheld from it under Exemption 5. First, it contends that the SF–52's and ancillary papers constitute "final agency actions"—of the Population Division, at least—and have lost any right to predecisional anonymity they may once have enjoyed. Alternatively, it says, even if the Division-generated SF–52's and other promotion-related documents can legitimately be said to be merely component parts of an agency-wide process of deciding who shall be promoted, they nevertheless constitute a body of "secret law" which by law cannot be kept secret. *Coastal States*, 617 F.2d at 867.

Plaintiff's reasoning under its first theory is that an SF–52 is utilized by the Population Division to identify a vacancy and cause it to be filled; how the rest of the agency goes about determining if and by whom the position will be filled is immaterial for FOIA purposes. The initiating SF–52's reflect an official determination of the Population Division that someone is needed to do a particular job, which is, in plaintiff's view, a "final" decision because it is no longer open to intradivisional debate.

The Bureau contends that an SF–52, initiated within a division to request a particular personnel action, is merely the culmination of the "deliberative process" within the division. The divisional SF–52, being at that point only a proposal, is then forwarded to the Personnel Division for action in accordance with the Merit Assignment Program, after which it may be subject to still further consideration by other components of the agency, and may in the process undergo a number of changes or be cancelled entirely. It is only the *final* SF–52, when accompanied by Standard Form 50 ("Notification of Personnel Action"), which has acquired the cachet of "final agency action" of the Bureau.[4]

In short, defendant views the promotion process as an integrated whole. It contends that the SF–52's and related materials contained in the Population Division notebooks are merely duplicates of the personnel action requests originated by the Division to begin the process. And the notebooks are not circulated (or even used by others save a single administrator and her assistant) and contain no information at all as to the ultimate decision, if any, made with respect to particular vacancies.[5]

██ The Court does not agree with plaintiff that the hiring/promotion process—or, for that matter, any other process involving serial consideration of proposed action by more than one person (and *a fortiori* by separate offices)—can be so fractionated that the mesne product at any stage may be treated as discrete final action for purposes of determining the availability of FOIA Exemption 5 for the paperwork. It is supported in its conclusion by the recent case of *Dow, Lohnes & Albertson v. Presidential Commission on Broadcasting to Cuba*, 624 F.Supp. 572 (D.D.C.1984), in which another judge of this court rejected a similar argument in the context of an attempt to obtain documents relating to government-sponsored radio broadcasts to be beamed to Cuba. Arguing that the critical agency decision was that to broadcast at all, plaintiff in *Dow, Lohnes & Albertson* contended all subsequent decisions merely implemented the critical policy choice, and were thus beyond the perimeter of the true "deliberative process." The

---

**4.** Defendant has declared its willingness to release all of its *final* SF–52's, subject to redaction of personal information as necessary to preserve the privacy of the individuals involved.

**5.** The notebooks, in fact, were created and are maintained by an intermediate administrator for the sole purpose of keeping track of the personnel requests initiated by her division. By way of her own uncontradicted affidavit, the intermediate administrator avers that she has no decisionmaking authority whatsoever with respect to promotion requests.

court disagreed, stating that "[a] decision to 'pursue' radio broadcasting is, in effect, a decision to make more decisions." *Id.* At 574.

■ By analogy the Population Division's decision in the instant case to initiate the personnel process by an SF–52 requesting that a position be filled is, in essence, a decision to make more decisions with respect to such essential matters as whether the position is needed at all, at what cost and from whose budget, what the successful applicant will be expected to do, and to whom he or she will report, as well as who should be chosen to fill it. The Court concludes that the process, which commences with the dispatch of a division-generated SF–52 and ends with the filling of (or a refusal to fill) the requested position and the issuance of an SF–50, is a continuum of reflection and tentative decision-making, and entitled to claim the deliberative process privilege throughout for all but the last step.[6]

■ Plaintiff's alternative argument, *viz.*, that promotion-related documents are disclosable because they constitute the "secret law" of the agency is even less convincing. The "secret law" exception to Exemption 5 which various courts have found comprehends unpublished interpretations of regulations or rulings which are unavowedly accorded precedential value by agency personnel in subsequent decisionmaking. *See Coastal States,* 617 F.2d at 867–68. *See also Shlefer v. United States,* 702 F.2d 233, 237 (D.C.Cir.1983); *Taxation With Representation Fund v. IRS,* 646 F.2d 666, 678 (D.C.Cir.1981). Even if, as plaintiff believes, Bureau officials are manipulating the merit system to the subversion of merit principles, the papers with which they are doing so cannot be regarded as "law," secret or otherwise; they are merely evidence of the offense, or at most contraband, and it is unnecessary to decide whether they

might be discoverable as such in some other forum to hold that they are surely not available to plaintiff under the "secret law" exception to FOIA Exemption 5.

■ The non-substantive documents involved in Appeal Nos. 1 and 2 which plaintiff would also like to have are the handwritten "logs" kept in the front of each of the notebooks as a sort of index. The Bureau contends that the logs are not "agency records" under FOIA, having been created by an enterprising employee (i.e., the intermediate administrator) on her own initiative and for her own personal convenience. *See Kissinger v. Reporter's Committee for Freedom of the Press,* 445 U.S. 136, 155, 100 S.Ct. 960, 971, 63 L.Ed.2d 267 (1980). Although the term "agency records" is not defined in FOIA, *see Forsham v. Harris,* 445 U.S. 169, 178, 100 S.Ct. 977, 983, 63 L.Ed.2d 293 (1980), personal notes which are not intended for distribution through normal agency channels and which cannot be said to be within the "control or dominion" of an agency are ordinarily considered to be beyond the scope of FOIA. *See British Airports Authority v. Civil Aeronautics Board,* 531 F.Supp. 408, 415–16 (D.D.C.1982); *Kalmin v. Department of the Navy,* 605 F.Supp. 1492, 1495 (D.D.C.1985). The Court finds that the logs, although undoubtedly work-related, were nevertheless a voluntary piece of unofficial scholarship of an employee who wished only to facilitate her own performance of her duties, and their disclosure can no more be compelled by a request for them under FOIA made to her employer than could, for example, her desk-side telephone directory or day-book.

*Appeal No. 3*

The Court concludes that the Bureau properly declined to conduct the required searches for items A and B of the request now denominated Appeal No. 3. The statute itself, 5 U.S.C. § 552(a)(3), mandates

---

**6.** That Exemption 5 protects the "deliberative process" involved in making personnel decisions, an area in which candor is particularly important, has been recognized by a number of other courts. *See, e.g., Ryan v. Department of Justice,* 617 F.2d 781, 791 (D.C.Cir.1980); *Allen v. Department of Defense,* No. 80–700, slip op. at 8–9 (D.D.C. Feb. 10, 1984); *Heimerle v. U.S. Attorney General,* 3 GDS ¶ 80,023 at 80,072 (D.D. C.1980).

that records requested under FOIA be "reasonably described," and the "reasonable description" requirement has been held to be satisfied if a professional employee of the agency who is generally familiar with the subject area can locate the requested records with a "reasonable amount of effort." H.R.Rep. No. 93–876, 93d Cong., 2d Sess. 5–6 (1974). *See Goland v. CIA*, 607 F.2d 339, 353 (D.C.Cir. 1978), *vacated in part*, 607 F.2d 367 (D.C. Cir.1979) (per curiam), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *Marks v. Department of Justice*, 578 F.2d 261, 263 (9th Cir.1978). "[B]road, sweeping requests lacking specificity are not permissible." *Marks*, 578 F.2d at 263 (citation omitted).

■ AFGE sought to "inspect" (although not yet to copy):

A. Every chronological office file and correspondence file, internal and external, for every branch office, staff office, assistant division chief office, division chief office, assistant director's office, associate director's office, deputy director's office, and director's office;

B. Every division or staff administrative office file in the Bureau which records, catalogs, or stores SF–52's or stores promotion recommendation memos, or both.

To have displayed the materials the Union wanted to peruse, however, would have necessitated, according to defendant, a canvass of some 356 Bureau offices for a multitude of files, all of which would have had to have been reviewed and purged of privileged or exempt information, then reassembled and refiled in the places from whence they had come. The Bureau would have been doing little else for days but waiting on plaintiff's documentary repast had it acceded to the request. Particularly in light of plaintiff's refusal to reformulate its request to make it more specific, as it was invited to do, defendant's rejection of such an audacious demand as too broad was not merely justified; it would have been an improvident expenditure of agency time to have indulged it.

■ The third portion of the subject of Appeal No. 3 is plaintiff's request for:

C. Every memo recommending promotion of any employee during FY 82 and FY 83 found or known to any branch chief or higher level supervisor employed at the Bureau.

The Bureau determined this request to be of manageable proportions, but it declined to conduct the necessary search without prepayment of a search fee of $3,560, calculated as the estimated cost of searches of the 356 offices, averaging about an hour each at an hourly charge of $10. *See* 15 C.F.R. § 4.9(c). Although the statute provides that documents "shall be furnished without charge or at a reduced charge where the agency determines that waiver or reduction of the fee is in the public interest because furnishing the information can be considered as primarily benefiting the general public[,]" 5 U.S.C. § 552(a)(4)(A), the public interest in such a quest now is hardly so great as to make a waiver of an appropriate charge for embarking upon it mandatory at the outset. Society undoubtedly has an interest in discovering and subjecting unlawful agency action to public scrutiny, but the Union's allegations of malfeasance here are too ephemeral at the moment to warrant such a search at public expense without further reason to suppose that the corruption suspected will be found. *See Eudey v. CIA*, 478 F.Supp. 1175, 1177 (D.D.C.1979).

■ In sum, while AFGE might very well be able to obtain at least some of the requested materials through the usual methods of discovery in a civil suit on the merits of its "preselection" allegations (were it, of course, able to satisfy the usual conditions antecedent to civil discovery on such a scale) it cannot circumvent those conditions by invoking FOIA in aid of the private inquisition it would like to conduct. FOIA requests were never intended to be used as the private equivalent of a grand jury subpoena.

Therefore, for the foregoing reasons, it is, this 9th day of April, 1986,

ORDERED, that plaintiff's motion for summary judgment is denied; and it is

FURTHER ORDERED, that defendant's motion for summary judgment is granted, and the complaint is dismissed with prejudice.