Scott ARMSTRONG, et al., Plaintiffs,

v.

George BUSH, et al., Defendants.

Civ. A. No. 89–142 (CRR).

United States District Court,
District of Columbia.

Nov. 18, 1991.

Michael E. Tankersley, Public Citizen Litigation Group, with whom Patti A. Goldman and Alan B. Morrison, Public Citizen Litigation Group, Kate Martin, American Civil Liberties Union Foundation, and Sheryl Walter, Natl. Sec. Archive, Washington, D.C., of counsel, were on the brief, for plaintiffs.

Vaughan Finn, Atty., U.S. Dept. of Justice, Civ. Div., with whom Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty. for the District of Columbia, and David J. Anderson, Elizabeth A. Pugh, and Stephen G. Harvey, Attys., U.S. Dept. of Justice, Civ. Div., Washington, D.C., were on the brief, for defendants.

## OPINION

CHARLES R. RICHEY, District Judge.

Before the Court is a Motion for a Protective Order filed by the defendants in the above-captioned action.[1] The defendants argue that many of the plaintiffs' discovery requests have exceeded the current scope of this lawsuit in light of the remand by the Court of Appeals in this case. *See Armstrong v. Bush*, 924 F.2d 282 (D.C.Cir. 1991). Upon careful consideration of the Motion, supporting and opposing memoran-

---

1. In its Order filed on October 11, 1991, the Court stayed the defendants' Motion for Summary Judgment pending the completion of discovery in this action, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. Accordingly, that motion is not addressed in this Opinion.

da, supplemental memoranda filed by the parties, the arguments of counsel, and the entire record herein, the Court has concluded that the Motion shall be granted in part and denied in part, for the reasons set forth below.

## I. Background

This case was originally filed on January 19, 1989, the last day of the Reagan administration, by several individuals and organizations seeking to prohibit defendants from erasing certain material stored on the National Security Council's ("NSC") Professional Office ("PROFS") computer system during the Reagan administration. Plaintiffs alleged that some of these materials were "records" within the meaning of the Presidential Records Act ("PRA"), 44 U.S.C. §§ 2201 *et seq.*, and the Federal Records Act ("FRA"), 44 U.S.C. §§ 2101–2118, 2901–2910, 3101–3107, and 3301–3324, and therefore could not be erased without the approval of the Archivist of the United States. On the same day, the plaintiffs filed requests under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking copies of all information stored on the defendants' PROFS computer systems, from the date the systems were installed until the end of the Reagan administration, a request the agency later denied in entirety. As a result of the issuance of a temporary restraining order, and a stipulation entered on January 31, 1989, defendants have preserved all of the computer tapes that are at issue.

Upon consideration of the defendants' motion to dismiss or, in the alternative, for summary judgment, this Court held, in an opinion issued on September 15, 1989, that § 702 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, authorized judicial review of the President's and NSC's compliance with the PRA and the FRA and that there were unresolved factual issues regarding whether the appellants complied with the recordkeeping statutes. Therefore, the Court denied the defendants' motion to dismiss or, in the alternative, for summary judgment. *Armstrong v. Bush,* 721 F.Supp. 343 (D.D.C.1989).

The court of appeals granted an interlocutory appeal, and affirmed in part, reversed in part, and remanded the case back to this Court for further proceedings. *Armstrong v. Bush,* 924 F.2d 282 (D.C.Cir. 1991). The D.C. Circuit held, *inter alia,* that the APA does not provide judicial review of the President's compliance with the Presidential Records Act because the President is not an "agency" within the meaning of the APA and because the Presidential Records Act impliedly precludes judicial review of the President's record creation and management decisions. *Id.* at 288–291. The Appeals Court also held that the APA provides judicial review over some aspects of the Federal Records Act. Judicial review under the APA is authorized to determine the adequacy of the NSC's recordkeeping guidelines and instructions pursuant to the FRA. *Id.* at 291–293. However, judicial review is not authorized to determine actual compliance with the guidelines, because the FRA specifies a method of action in such cases: the agency head and the Archivist must request that the Attorney General initiate action to preserve the documents. A private litigant may seek judicial review of the agency head's or Archivist's refusal to seek an enforcement action by the Attorney General in the event of noncompliance with the guidelines. *Id.* at 294–296.

Finally, the Court of Appeals affirmed the denial of the government's motion for summary judgment because the record was not yet adequate to determine whether the NSC's recordkeeping guidelines are arbitrary or capricious. The case was remanded for further development of the record on this issue. *Id.* at 296–297. The court stated that it was not clear whether the written documents on the record informing the NSC staff of their obligation to maintain hard copies of federal records on the PROFS computer system comprises the total guidance given to NSC staff regarding their recordkeeping responsibilities, or whether there is other, "informal, supplementary guidance" given:

> For example, how did appellants respond to questions about whether particular documents or types of documents consti-

tute records that must be maintained? Was any additional guidance provided in staff meetings in which recordkeeping responsibilities were discussed? Did appellants consistently advise their staff that particular types of documents—such as PROFS notes or calendars—are or are not records?

*Id.* at 296.

The Court stated that with responses to such questions, either through affidavits or testimony, the record should contain sufficient information for the district court to determine whether the NSC recordkeeping guidelines and directives satisfy the NSC's obligations under the FRA, or whether the guidelines and directives permit the destruction of record material and therefore are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". 5 U.S.C. § 706(2)(A); 924 F.2d at 296. The Court also noted that the fact that some record material may have been destroyed does not compel a finding that the guidelines are inadequate. Rather, the inquiry is whether the guidelines adequately explain the factors that staff should consider in deciding whether documents and computer entries are records. *Id.* at 297, n. 14.

Upon remand, the plaintiffs filed a second amended complaint on April 19, 1991, and the Court issued a scheduling order to govern the remainder of the case. *See* Order filed May 3, 1991. In the second amended complaint, the plaintiffs allege that: (1) substantial amounts of the information on the preserved PROFS tapes constitute "agency records" subject to the FOIA, and that the defendants have improperly withheld those agency records which are not exempt from disclosure under the FOIA; (2) the guidelines issued by the Executive Office of the President ("EOP") and the NSC are arbitrary and capricious in violation of the FRA because they authorize destruction of agency records; (3) certain general schedules, promulgated by the Archivist, which authorize the disposal of certain electronic records after the lapse of specified periods of time, are arbitrary and capricious because they authorize the disposal of agency

records; and (4) the Archivist has violated his statutory duty to initiate action to stop improper destruction of agency records on the PROFS system. *See* Second Amended Complaint at 11–14.

The defendants filed their motion for summary judgment and motion for a protective order on August 28, 1991. A flurry of supporting and opposing pleadings were filed through October 9, 1991. The Court heard arguments from counsel on the motion for a protective order and stayed the motion for summary judgment on October 11, 1991. The Court also ordered counsel to submit supplemental pleadings which have now been filed, making this motion ready for resolution.

## II. Analysis

The Federal Rules of Civil Procedure state that parties may obtain discovery on any unprivileged matter "which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). The information need not be admissible at a trial if the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* For good cause shown, the court may make any order justice requires to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense" in the course of discovery. Fed.R.Civ.P. 26(c). The dispute over discovery in this case involves essentially nine areas of inquiry which the defendants assert are beyond the scope of this case. Each of these areas shall be considered in turn.

### (1) Training on the Use of the PROFS Systems

■ The plaintiffs seek information on the oral training PROFS users receive concerning what types of communications can be sent using PROFS and how to use the computer to save, delete, and manipulate information. The defendants assert that this information is unrelated to the guidelines they are given for preserving federal record material on PROFS, and that the computer technicians who teach employees

how to use PROFS have no role in creating or issuing the recordkeeping guidelines. The defendants also contend that the types of communications that can be sent and mechanical processes involved in saving and deleting files have nothing to do with guidelines for preserving federal record material.

The Court is unpersuaded by the defendants' objections on this point. The computer technicians instruct employees on the use of the PROFS system; it is quite possible that in the course of this instruction, questions arise informally about the obligations to save materials under the FRA, even though the instruction is not designed to cover this issue. Such an inquiry is directly relevant to possible sources of informal guidelines on records preservation and is well within the scope of the remand. While the nature of the training regarding the types of information sent on PROFS and the mechanical processes of saving and manipulating information is less directly relevant to the guidelines, it is also permissible. An inquiry into training regarding these matters might demonstrate that this training involves more guidance regarding the preservation of records than the defendants claim. It may also shed some light on the context in which records are preserved and the adequacy of the guidelines in this context. While this inquiry may not yield such insight, the plaintiffs are entitled to some exploration of these possibilities.

(2) NSC Instructions to Staff on Identifying Printed Records that Should Be Preserved as "Agency Records"

█ The plaintiffs assert that the NSC's instructions on preserving PROFS materials incorporate, by reference, NSC's practices for printed materials. The instructions on printed records instruct staff that some types of records should be preserved as agency records pursuant to the FRA, but others are "Presidential records" pursuant to the PRA, or "convenience records." The plaintiffs argue that the classification scheme as it distinguishes among the various types of records directly bears on the adequacy of the guidelines for preserving records under the FRA, since

Presidential records are not governed by FRA procedures and involve different rules of preservation and public access. The defendants counter that the question of how Presidential records are classified is one that was specifically held not subject to judicial review by the Court of Appeals and is therefore beyond the scope of discovery.

The Court agrees with the defendants. The Court of Appeals held that "the PRA precludes judicial review of the President's recordkeeping practices and decisions." 924 F.2d at 291. The President's recordkeeping practices and decisions include the guidelines used in keeping Presidential records. While the plaintiffs' argument has some appeal—that is, a logical way to determine what the agency defines as a record under the FRA is to see what materials are excluded from that definition—it violates the clear mandate from the Court of Appeals. The plaintiffs must focus on the defendants' guidelines relating to "federal records" rather than conducting discovery on the instructions relating to "Presidential records".

(3) NSC Practices On Use and Access to Printed PROFS Records

Among the evidence marshalled by the defendants to show that the guidelines for preservation of PROFS materials are adequate are memoranda instructing employees that "all data stored electronically will be subject to a similar process of review and disposition" as that governing written materials. *See* Def.'s Statement of Material Facts As To Which There is No Genuine Issue, ¶¶ 7, 8; Def.'s Ex. 1(e), 1(f). The PROFS materials that are printed in hard copy are sent to the NSC Secretariat where they are filed with and handled like any other printed documents. *Id.* Some of these documents are treated as agency records subject to the FRA and FOIA, but others are classified as Presidential records or nonrecords, which are not subject to the FRA or FOIA.

█ The plaintiffs assert that some printed PROFS documents which are agency records are misclassified, and seek dis-

covery on the NSC's practices regarding use and access to these materials in order to show that the NSC's guidelines are inadequate to properly classify these PROFS materials. The defendants argue that an inquiry into the NSC's printed records system exceeds the scope of the complaint, which focused on whether record material on the PROFS system is preserved before being erased. Further, they argue that to the extent this inquiry focuses on the classification of Presidential records, it violates the Court of Appeals' decision in this case that the PRA does not allow judicial review.

Insofar as the plaintiffs seek discovery regarding the classification of printed Presidential records, the Court finds that this inquiry violates the decision of the Court of Appeals, as discussed in (2), *supra.* However, to the extent that the inquiry focuses on the treatment of federal records, the Court finds that it is permissible. It is the agency which initially referred to the treatment of printed records to support the adequacy of the guidelines for the computer records. *See Id.* Admittedly, there is a difference between the guidelines for preserving computer records and the guidelines for preserving them once they are in printed form. But this area of inquiry remains relevant to the issue of the adequacy of the guidelines for the preservation of the PROFS records, and the Court declines to construe the plaintiff's complaint so narrowly as to be concerned only with the preservation of PROFS records while they are on the computer.

(4) Previous Recovery of PROFS Material in Response to Requests By Other "Governmental Entities"

■ The NSC has responded on several occasions to requests from other, unidentified "governmental entities" for selected information that is on the PROFS backup tapes which were preserved, and printed materials from the backup tapes for these entities. *See* Pl.'s Ex. 5, Resp. to Interr. No. 35. The plaintiffs seek information about the nature of the requests, steps taken to recover the material, and what types of information were printed. They claim this information is relevant because it may illuminate the extent to which PROFS contains substantive "record" material, and because the plaintiffs' FOIA request specifically covers documents printed-out from the backup tapes. Defendants argue that this information is not relevant. The amount of substantive record material is irrelevant to the adequacy of the guidelines, since the defendants claim employees are instructed to preserve all record material on the PROFS system. The defendants also argue that this information involves a question of actual compliance with FRA rather than the adequacy of the guidelines, an inquiry precluded by the Court of Appeals' decision. Finally, the defendants claim that the plaintiffs' overbroad FOIA requests do not entitle them to obtain through discovery any material from the tapes. Rather, they argue, the plaintiffs are not entitled to obtain documents through the FOIA until they file a proper request.

Insofar as the plaintiffs are seeking information relevant to the issue of how much of the material on PROFS is record material, the Court finds that this is a permissible area of inquiry. In order to assess the adequacy of the guidelines for the preservation of computer records, it would appear helpful to be able to discern the context in which the guidelines are applied. If most of the material preserved on PROFS is ephemeral information, outside of the scope of the FRA, such that the occasional record subject to the recordkeeping statute would stand out, the guidelines might need to be less detailed than if a great deal of the information on PROFS is record material. The plaintiffs are entitled to consider the question of this context as they develop their case. The information might not ultimately prove helpful, but it is a relevant area of inquiry. Nor is the Court convinced that the information is only relevant to the issue of compliance.

To the extent that the plaintiffs seek the information with regard to their FOIA request, the Court finds that this information is discoverable insofar as it bears on the issue of whether their FOIA requests were

properly denied as unreasonably burdensome.

A proper request under the FOIA must reasonably describe the records sought. 5 U.S.C. § 552(a)(3)(A). An agency need not honor a request that requires 'an unreasonably burdensome search'. *Am. Fed'n of Gov't Employees, Local 2782 v. United States Dep't of Commerce*, 907 F.2d 203, 209 (D.C.Cir.1990), citing *Goland v. CIA*, 607 F.2d 339, 353 (D.C.Cir.1978). A request is generally considered reasonably described if a professional employee of the agency familiar with the subject matter can locate the records with a "reasonable amount of effort." *Am. Fed'n of Gov't Employees, Local 2782 v. United States Dep't of Commerce*, 632 F.Supp. 1272, 1278 (D.D.C.1986), citing H.R.Rep. No. 93–876, 93d Cong., 2d Sess. 5–6 (1974), U.S.Code Cong. & Admin.News 1974, p. 6267. Here, the plaintiffs' initial FOIA request sought copies of all information stored on the defendants' PROFS computer systems, from the date the systems were installed until the end of the Reagan administration. According to the defendants, this request would require defendants to print out and process over seven million pages of material, and would involve several months of continuous work by staff and severe limitations in computer access for other projects just to produce the records. All of this information would then need to be reviewed and classified. *See* Jolly Decl. at ¶¶ 4–5, 10–11; Wright Decl. at ¶¶ 5–8, 12.

The plaintiffs do not appear to seriously dispute that the initial request was unduly broad, as they have expressed willingness from the outset to narrow the request. *See* Aff. of R. Scott Armstrong, Ex. 1–3, Jan. 19, 1989 (attached to plaintiffs' motion for temporary restraining order). However, since the initial request, plaintiffs appear to have made sincere attempts to formulate more narrow requests. *See,* Pl.'s Opp. to Mot. for Protective Order at 28–29; Pl.'s Ex. 3, Response to Inter. No. 28(f); Pl.s Ex. 5, 6, Response of NSC and EOP to Inter. No. 54; Pl.'s Ex. 9, NSC Resp. to Doc.Req. 14; Pl.'s Ex. 10, EOP Resp. to Doc.Req. 8. The defendants have objected to all of these requests as unreasonable. *Id.* The plaintiffs contest the defendants' claim that all of these requests would place an unreasonable burden on the agency, particularly in light of the defendants' ability to respond to the requests from other governmental agencies.

The D.C. Circuit has held that where the agency's ability to retrieve requested documents is at issue, an "undiscriminating adoption" of the agency's assertion is inappropriate and could "raise the specter of easy circumvention" of the FOIA. *Founding Church of Scientology, Inc. v. Nat'l Security Agency*, 610 F.2d 824, 837 (D.C.Cir.1979). The Court stated that summary judgment is not warranted where the sufficiency of the agency's identification or retrieval procedure is "genuinely in issue." *Id.* at 836. However, an agency's affidavit detailing the reasons that searches are unreasonably burdensome should be accepted unless there is "some reason to believe that the documents could be located without an unreasonably burdensome search." *Goland v. CIA*, 607 F.2d 339 (D.C.Cir.1978), *cert. denied* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980).

In this case, the Court concludes that the plaintiffs have established that there is a genuine issue regarding whether all of their requests are unreasonably burdensome. For example, they point to the facts that other requests have been processed, and that the system has some indexing capabilities to dispute that all their requests would require the page by page processing of information the defendants claim. *See* Pl.'s Opp. at 27–31. The plaintiffs are entitled to discovery to question the defendants' assertion. Since information regarding previous searches may provide enlightenment on that issue, it is allowable.

### (5) Alteration of PROFS Software

The defendants have provided plaintiffs with manuals describing the standard operation of the PROFS software. The plaintiffs seek information on modifications that the computer programmers have made

**554**

to the software which affect the communication and recording of information. The defendants oppose this request on the grounds that technical modifications of the PROFS software have no bearing on the adequacy of the recordkeeping guidelines.

The Court finds that this information is relevant. Like the question of how much information on PROFS is record material (*see* (4), *supra*), this inquiry provides a context in which to evaluate the guidelines. It may provide background on the types of functions employees will be performing and how the guidelines will be used in relation thereto. Therefore, the Court will allow this inquiry. The Court cautions the plaintiffs, however, not to get sidetracked from the focus on the question of the adequacy of the guidelines.

### (6) Sample of Materials Preserved on PROFS Backup Tapes

■ The plaintiffs seek a sample of the communications recorded by PROFS in order to gain information regarding the nature of the records contained on PROFS; that is, whether most of the information is or is not substantive record material. Plaintiffs maintain that this information is relevant both to a determination of whether defendants' guidelines are adequate, and in order to determine whether the agency is properly processing its FOIA requests. The defendants argue that this request is extraordinarily burdensome, that the type of information on the tapes is irrelevant to the adequacy of the guidelines for their preservation, and that a sampling is not a permissible form of discovery relating to their FOIA request.

As discussed in (4) above, the Court agrees with the plaintiff that discovery regarding the content of the tapes is relevant to the inquiry of the adequacy of the guidelines. However, because the Court finds that the defendants' objections regarding the burden of the discovery and the proper use of sampling in FOIA cases have merit, it shall deny this area of discovery for the present time.

Samplings have been allowed as a form of discovery relating to FOIA requests in order to test the validity of the FOIA exemptions asserted by the government. *See, e.g., Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). However, in such cases samples have been ordered by the court to test the validity of exemptions claimed by the agency. *See, e.g., Meeropol v. Meese,* 790 F.2d 942, 956–57 (D.C.Cir.1986). In this case, the plaintiffs have not yet successfully demonstrated that they have even formulated a valid FOIA request which reasonably describes the records they seek. *See* (4), *supra.* Until producing a proper request, they are not entitled to obtain, through discovery, a large portion of the records they seek.

Rule 26 specifically authorizes protective orders to protect parties from "undue burden or expense". Fed.R.Civ.P. 26(c). In this case the defendant argues forcefully that the request for a sample would cause them great hardship. *See* Def.'s Reply at 19–21, Opp. to Surreply at 3–6. The plaintiffs dispute this claim, and, as stated in (4), *supra,* and (7), *infra,* the Court shall allow discovery on the issue of whether such requests are truly burdensome. At this point, however, the plaintiffs' only permissible justification for needing the information, namely, to provide a context through which to evaluate the guidelines, is not sufficiently strong to induce the Court to order the plaintiffs to undergo what they assert would be an extreme effort.

Should the plaintiffs successfully demonstrate, as a result of further discovery, that producing such a sampling would not in fact inflict upon the defendants undue burden or expense, the Court might, upon proper motion, reconsider this issue. In the meantime, and until *all* aspects of this case have been finally resolved, the defendants shall preserve all of the PROFS backup tapes, as indicated in the stipulation entered on January 31, 1989.

### (7) Defendants' Estimates Concerning the Burden of Recovering Material From the Preserved PROFS Backup Tapes

■ The defendants rely upon affidavits from their computer experts to assert that

processing plaintiff's FOIA requests is unreasonably burdensome. *See* Jolly decl. at ¶ 6; Wright decl. at ¶ 6. Plaintiffs seek an opportunity to examine these witnesses on the assumptions behind this testimony, because they contend that the estimates overstate the case and exaggerate the burden. As discussed in (4), *supra,* the Court finds that this information involves a permissible area of inquiry, and shall allow this discovery.

#### (8) Information Stored Only in Electronic Form on PROFS

█ Plaintiffs seek discovery regarding information stored on PROFS which is never printed out. Plaintiffs assert that some of this information is record material subject to the FRA, but that the guidelines permit its destruction. Defendants argue that there is no reasonable basis for this conclusion and that the guidelines require employees to print and preserve any information on PROFS that is a record.

The information plaintiffs seek is relevant to the issue of the adequacy of the guidelines. If the plaintiffs are correct that there are types of information that should be preserved which the guidelines do not address, that information should be made available. The defendants may be correct that there is no evidence to support this allegation. However, the defendants have not successfully shown that the inquiries have been made for an improper purpose, or that they are irrelevant. The plaintiffs are entitled, therefore, to test this contention through discovery.

#### (9) Facts Concerning the Archivist's Conduct

█ In seeking summary judgment on the plaintiffs' claim that the Archivist failed to comply with his statutory duty to prevent improper destruction of records, the Archivist relied on a declaration of an officer of the Archives, Raymond A. Mosley, stating that the Archivist considered but chose not to take action to prevent improper destruction in 1986. *See* Mosley decl. at 6. The plaintiffs assert that Mr. Mosley was not present at the meetings he recounts and that his testimony is apparently based on hearsay. The plaintiffs seek to depose another current officer of the Archives who was present at the relevant meetings, and who is also responsible for providing guidance to the EOP and NSC on records management. The defendants object to this deposition as unnecessary because Mr. Mosley was competent to testify regarding the relevant issues, which are also a matter of public record.

The Court is not convinced that the testimony of Mr. Mosley is conclusive. Since he was not present at the relevant meetings, and the plaintiffs' proposed witness was, the plaintiffs are entitled to pursue the issue. The issue is undoubtedly relevant as it is central to the plaintiff's claim against the Archivist.

### III. Conclusion

For all of the reasons previously stated herein, the defendants' Motion for a Protective Order shall be granted in part and denied in part. With respect to the nine areas addressed in this Opinion, the Court shall grant the motion, and not permit discovery at this time in area (6). The Court shall also restrict discovery in areas (2) and (3), to the extent that there shall be no discovery regarding Presidential records and the Presidential Records Act (but discovery shall be permitted regarding Federal records). The Court shall deny the defendants' motion, and permit discovery in areas (1), (4), (5), (7), (8), and (9). In addition, pursuant to Rule 16 of the Federal Rules of Civil Procedure, the Court shall hold a status conference as soon as the business of the Court permits, in order to set a revised schedule to govern this action.