Catherine A. **BRODERICK**, Plaintiff,

v.

John S.R. **SHAD**, Chairman, Securities and Exchange Commission, Defendant.

Civ. A. No. 86–1834.

United States District Court, District of Columbia.

March 20, 1987.

Robert M. Adler, Washington, D.C., for plaintiff.

Faith D. Ruderfer, Securities and Exchange Com'n, Office of General Counsel, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Plaintiff Catherine Broderick, an attorney at the Securities and Exchange Commission (SEC), brings this Title VII sex discrimination and harassment case against the SEC Chairman in his official capacity. She claims the supervising attorneys at the SEC's now-closed Washington Regional Office (WRO) sexually harassed plaintiff and other female employees, rewarding those who allowed sexual advances and retaliating against those who complained about the hostile work environment. The SEC denies these allegations.

The parties have been engaged in extensive discovery and now bring before the court discovery disputes which they were unable to resolve themselves.[1] Three motions have been fully briefed and are now pending: (1) defendant's motion to compel answers to interrogatories and production of documents; (2) plaintiff's motion to compel production of documents and answers to deposition questions; and (3) defendant's motion to quash subpoenas *duces tecum.*

### Defendant's Motion to Compel

Defendant SEC moves to compel production of certain documents and answers to four interrogatories. After plaintiff's response to this motion, defendant withdrew several of its document requests, and only two document requests remain at issue.

### A. Arrival/Departure Logs

■ First, the SEC has requested time logs or records providing the basis for plaintiff's allegations that she was reprimanded for being late while other employees were not. Def's 1st Doc.Req. #4 and #5; Complaint ¶ 75. Broderick produced a log of her own arrival times in response to request #4,[2] but declined to produce a record that she kept of the arrival and departure times of other WRO attorneys in response to request #5.[3] Plaintiff claims that there is no "Log No. 3," but rather only a narrative summary of events that she prepared for her attorney that is protected by the attorney-client privilege. *See* Pl's Ex. H, ¶¶ 4–7 (Aff. of May); Ex. I, ¶¶ 5–8 (Aff. of Broderick). The SEC believes there is a "log" and requests an order from the court compelling production.

Despite defendant's belief that a "log" exists, we must accept plaintiff's sworn statements that a solely factual record does not exist. Instead, the "log" is part of a narrative summary that is clearly protected from disclosure by the attorney-client privilege as a confidential communication between a client and her attorney in furtherance of their professional relationship.

---

1. As a result of counsels' inability to resolve these differences we have been deluged with papers totalling 582 pages. In view of the nature of these disputes, many of them petty and of marginal significance in the context of this case, we find an abuse of the discovery process and a gross imposition on the time of this court.

2. This is so-called "Log No. 1".

3. This is so-called "Log No. 3". Log No. 2 is represented as not having been prepared by plaintiff nor in her possession.

### B. *Medical Records*

■ Defendant has requested all of plaintiff's medical records from January 1975 to the present, asserting that plaintiff has put her emotional and mental health at issue. *See* Complaint ¶ 80. In the complaint, Broderick alleges that she suffered "severe psychological stress," "recurring headaches," and "insomnia" as a result of working at the WRO. *Id.* Since plaintiff did not become employed by the SEC until 1979, this request on its face is overbroad.

Plaintiff objects to this request for the wholesale production of her medical records. She claims that she has only waived the physician-patient privilege for *relevant* medical evidence, and that there is no such evidence. *Sklagen v. Greater Southeast Community Hospital*, 625 F.Supp. 991, 992 (D.D.C.1984). Broderick offers an affidavit testifying that she did not seek or receive medical treatment for psychological stress, headaches or insomnia from 1975 to present. Pl's Ex. I, ¶¶ 9–11.

We agree with plaintiff that she has only waived her privilege regarding medical records that could fairly be considered within the scope of ¶ 80 of the complaint. The focus of this action is not on plaintiff's physical or mental injuries, but rather on the alleged discrimination and harassment by the SEC. Since Broderick has offered a sworn statement that she has not sought or received medical treatment for the conditions alleged in ¶ 80 of her complaint and that no relevant medical records exist, we deny as irrelevant and intrusive defendant's motion to compel a wholesale investigation of plaintiff's medical history over the past 11 years.

### C. *Interrogatories*

The SEC also moves to compel answers to four interrogatories: # 32(c), # 33(c), # 52 and # 76.[4] The interrogatories all relate to specific paragraphs of plaintiff's complaint. After considering plaintiff's responses to these interrogatories and the explanations in the motion before us, we find the answers to interrogatories # 32(c)

and # 33(c) to be inadequate and therefore order plaintiff to respond more completely to the questions. With regard to interrogatories # 52 and # 76, we find plaintiff's responses to be sufficient and deny defendant's motion to compel.

Two of these four interrogatories, *i.e.*, # 32(c) and # 33(c), concern two employees who are not parties to this lawsuit, Brooks and McDonald. They relate to allegations in ¶¶ 47 and 48 of the complaint. In interrogatory # 32(c), the SEC asks for the "dates and times of the alleged absences of Brooks ... when coincided with McDonald's absences and identify the persons with knowledge or information pertaining thereto." Def's Ex. D # 32(c). Interrogatory # 33(c) likewise requests the "dates and places when Brooks and McDonald were seen allegedly flirting with each other ..., identifying the persons who saw Brooks and McDonald." Def's Ex. D # 33(c). Plaintiff's answers to these interrogatories (as amended in her opposition to defendant's motion) are not fully responsive. She shall, to the extent she is able to do so, identify any particular dates, times, places, and people that she knows of with regard to each of these two questions. In addition, she shall supplement her responses with any additional facts which become known to her during discovery. Fed.R. Civ.P. 26(e).

■ In interrogatory # 52, the SEC asks for the basis of ¶ 68 of the complaint. Def's Ex. D # 52. This paragraph concludes the section entitled "The Supervisors' Sexual Harassment Created a Hostile Work Environment" and states, "[u]pon information and belief, these supervisors continue to sexually harass women employees of the SEC today." Complaint ¶ 68. Plaintiff's response was that she had no present knowledge of specific facts regarding this allegation, but would supplement her answer as facts came to light. Defendant claims this provision of the complaint is a violation of Rule 11 because plaintiff does not have specific support for her allegation.

---

**4.** These are part of defendant's original interrogatories consisting of 84 separate questions, some

with subparts. Plaintiff's answers comprised 49 pages. Pl's Opp at 15.

Plaintiff's allegation is not so improper as to be a violation of Rule 11. The particular paragraph in question is an inference based on the preceding paragraphs, the pattern of sexual harassment alleged through the complaint and the alleged lack of steps by the SEC to halt the harassment.

Finally, interrogatory # 76 requests the basis of ¶ 96 of the complaint, second sentence. Def's Ex. D # 76. Although there is no second sentence in ¶ 96, we assume the reference is to the second clause which states, "the few supervisors who did not actively participate in the harassment failed to take any steps to halt the pervasive sexual harassment of women employees by other supervisors." Plaintiff's answer to interrogatory # 76 was "see answers to earlier interrogatories." Plaintiff's brief in response to the motion to compel clarifies this answer, noting that ¶ 96 sums up the allegations in ¶ 94 and ¶ 95, so the answers to interrogatories about these preceding paragraphs are responsive to interrogatory # 76 as well. As clarified, plaintiff's answer is both responsive and sufficient.

### Plaintiff's Motion to Compel

Plaintiff moves to compel production of certain documents as well as answers to deposition questions about the SEC Ethics Inquiry (see A below).[5] Of the plaintiff's request for production of documents, all responsive documents have been produced and none withheld in response to requests ## 1, 2, 3, 4, 15, 17, 23, 27, 32, and 40. Defendant has been unable to find any responsive documents for requests ## 18, 26, 31, 38 and 39. In addition, plaintiff has withdrawn requests ## 11 and 12. The remaining 23 requests made by Broderick are in dispute and can be grouped into categories according to the documents requested or the objection raised by defendant.

### A. The Ethics File and Inquiry

The primary discovery dispute in this case concerns the Ethics File, which was compiled by the SEC Ethics Counsel in her investigation of the misconduct and other related matters alleged by Broderick. The Office of General Counsel of the SEC began this internal inquiry when the Executive Director referred the matter after dismissing the grievance filed by Broderick in 1984. The matter in turn was referred to the Ethics Counsel. During the course of the investigation, witnesses were interviewed, documents were gathered, and ultimately recommendations were made to the General Counsel for review. The SEC claims that the entire inquiry, together with the documents contained in the Ethics File, is protected by the deliberative process, self-evaluative, and attorney work product privileges. Therefore, documents responsive to plaintiff's requests ## 5, 6, 7, 8, 9, 10, 14, 16, 24, 28 and 29 that are in the Ethics File have been withheld by defendant, and plaintiff moves to compel their production. See Def's Ex. E(1) (index of Ethics File and accompanying privileges).

 Of the three privileges claimed by the government, the privilege most directly applicable to materials in the Ethics File is the deliberative process privilege.[6] Under this privilege, government documents that are both "pre-decisional" and "deliberative" are protected from disclosure if the disclosure would adversely affect the purposes of the privilege. *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980). "To test whether disclosure of a document is likely to adversely affect the purposes of the privilege, courts ask themselves whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency." *Id.* The SEC Ethics Inquiry appears to rely on voluntary cooperation and "honest and frank communication" by SEC

---

**5.** Plaintiff's First Request for the Production of Documents filed August 8, 1986 consists of 40 separate requests.

**6.** The attorney work product doctrine and self-evaluative privileges may also protect certain documents in the Ethics File protected by the deliberative process privilege.

employees that might be stifled by public disclosure. The inquiry is an internal, non-public investigation by the Ethics Counsel into alleged misconduct within the agency and thus is exactly the kind of agency process that should be protected by this privilege.

■ However, not all of the documents contained in the Ethics File are both "pre-decisional" and "deliberative", and therefore not all of the file is protected by the privilege. Factual information is generally considered to be outside the privilege, since it is not the kind of deliberative weighing of opinions and recommendations sought to be protected. *EPA v. Mink*, 410 U.S. 73, 87–88, 93 S.Ct. 827, 836–37, 35 L.Ed.2d 119 (1973); *Mead Data Central v. U.S. Department of Air Force*, 566 F.2d 242, 256 (D.C. Cir.1977). Factual data gathered in the Ethics Inquiry at issue do not become privileged just because they are part of the "Ethics File" compilation.[7] The government has not sustained its burden of showing that the file is privileged in its entirety, because revelation of the facts here would not reveal the deliberative process itself. *See Playboy Enterprises, Inc. v. Dept. of Justice*, 677 F.2d 931, 935–37 (D.C.Cir. 1982). Indeed, Broderick herself had a great impact on the facts selected for investigation, since the inquiry was based in large part on her specific allegations of misconduct.

Several parts of the Ethics File appear to be solely or mostly factual and therefore shall be produced by defendant. These parts are files ## 6, 9, 10, 11, 12, 15, 18, 21, and 22. In addition, any other segregable factual information in the remaining files shall be produced by the SEC. At the same time, any handwritten notes of the Ethics officer and counsel, recommendations, opinions, or conclusions should be redacted from these documents before disclosure, as those portions are protected by the deliberative process privilege.

### B. WRO Closing Documents

■ In request # 33, plaintiff seeks documents regarding the closing of the WRO which is the pertinent location of the events of which plaintiff has complained. The SEC claims these documents are irrelevant and are also protected by the deliberative process privilege. Defendant has compiled both a privilege list/index of these documents (Def's Ex. E(2)) and an index of the documents it has released from the WRO closing file (Def's Ex. E(3)). Unfortunately, these two lists do not use the same terms for each document, and it is impossible to determine what has been produced and what has been withheld. Many of the files contain both documents protected by the deliberative process privilege discussed above and documents that are clearly factual and not privileged. Although the SEC appears to have produced many of the factual documents, their index is inadequate. *See Coastal States*, 617 F.2d at 861. We will require the SEC to prepare a more accurate index of the withheld documents qualifying for the privilege by being both predecisional and deliberative.

### C. EEO Draft Decisions

■ The SEC is withholding two drafts of the recommended EEO decision on plaintiff's administrative complaint which are responsive to documents requests ## 5, 6, 7, 8, 9 and 37. These drafts were prepared by a law firm and sent to the EEO Director and the Executive Director of the SEC, who substantially revised the drafts before release. *See* Def's Opp. at 17. The SEC asserts the deliberative process privilege with respect to these documents. We agree that the privilege protects the drafts against disclosure. The draft recommended decisions are clearly both pre-decisional and deliberative, and disclosure would obviously thwart the purposes of the government's deliberative process privilege. *See Coastal States*, 617 F.2d at 866. Thus, we deny plaintiff's motion to compel production of these privileged documents.

---

**7.** An "Index of File of Ethics Investigation" lists 25 categories of documents contained in the File. Def's Ex. E(1).

### D. *Privacy Act Objections*

 Broderick also moves to compel production of documents responsive to requests ## 13, 20, 30, 34, 35 and 36, which defendant claims are protected under the Privacy Act, 5 U.S.C. § 552a. These requests seek documents regarding promotions, awards, appraisals, and transfers of certain WRO personnel, male and female. While such personnel records fall within the Privacy Act, the documents can nonetheless be disclosed pursuant to a court order compelling production. 5 U.S.C. § 552a(b)(11); *Weahkee v. Norton,* 621 F.2d 1080, 1082 (10th Cir.1980) (personnel files of employees promoted over plaintiff ordered produced in Title VII case over Privacy Act objection). Such an order for discovery of materials protected under the Privacy Act is judged by the usual standard of relevance in Fed.R.Civ.P. 26(b)(1) that applies to all discovery. *Laxalt v. McClatchy,* 809 F.2d 885, 888–89 (D.C.Cir. 1987).

Applying the relevance standard to the document requests at issue leads us to the conclusion that documents responsive to ## 13, 20, 34 and 35 must be produced. These documents are relevant to plaintiff's allegations of sexual preference and hostile atmosphere of sexual harassment. However, the documents responsive to requests # 30 and # 36 at best are only minimally relevant to this action, since we can not find a reference to either Chris Dear or Linda Cole in the complaint or in plaintiff's motion.[8] We decline to order production of documents covered by requests # 30 and # 36 given the privacy interests of these two individuals and the lack of any showing of the relevance of these documents. *See Laxalt v. McClatchy,* at 889–90.

### E. *EEO Complaint*

 In response to requests ## 5, 6, 7, 8 and 9 regarding sexual harassment at the WRO, defendant has withheld one EEO complaint of a WRO employee other than Broderick. Title VII prohibits the disclosure of this complaint. *See* 42 U.S.C. §§ 2000e–5(b), 2000e–8(e); *EEOC v. Associated Dry Goods,* 449 U.S. 590, 101 S.Ct. 817, 66 L.Ed.2d 762 (1981). We therefore deny plaintiff's motion to compel production of this document.

### F. *"Personal" Files*

 The SEC refuses to produce certain documents responsive to requests ## 5, 6, 7, 8, 9 and 25 that are "personal" files of third parties outside the SEC's possession, custody and control. These personal documents include a file maintained by Herbert Brooks' individual counsel during plaintiff's EEO proceeding and calendars/daily diaries of certain WRO employees. *See* Def's Ex. D ¶¶ 3, 4 (Decl. of Richard Sheehan). Def's Opp. at 49–50. The SEC can not be required to produce these documents; rather, plaintiff must discover the documents from their owners and/or possessors.

### G. *Time Frame Objection*

Defendant has made a general objection to plaintiff's entire request for documents regarding any items outside the time period in which Broderick was employed at the WRO (1979 to 1984). The SEC asserts documents outside Broderick's employment period at the WRO are irrelevant; plaintiff, on the other hand, argues that her requests were carefully tailored to gather relevant evidence, and that such evidence can be from different time periods. With the caveat that plaintiff's discovery requests may not relate to the irrelevant period prior to 1979, we hold that plaintiff's discovery is not confined to the end of her WRO employment in 1984, but may embrace the period subsequent to 1984.

### H. *Unduly Burdensome Requests*

 Plaintiff also moves to compel production of documents requested in ## 19, 21, and 22, which defendant says are unduly burdensome requests that are of minimal relevance. We find requests ## 19, 21

---

**8.** Indeed, defendant asserts that Linda Cole resigned from the WRO four months before plaintiff began working there. Def's Opp. at 58.

and 22 to be unduly burdensome, particularly considering the minimal relevance of these documents to plaintiff's claims of harassment and discrimination. *See* Fed.R. Civ.P. 26(b)(1). These documents do not even concern Broderick, but rather relate to leave, sick leave and travel by other WRO personnel. The SEC has estimated the burden of complying with the requests, and the burden is substantial. Def's Ex. F. ¶¶ 3–10 (Decl. of Hoffman). Therefore, we deny plaintiff's motion to compel production of the documents requested in ## 19, 21, and 22.

### Defendant's Motion to Quash

Defendant moves to quash the deposition subpoenas *duces tecum* issued to Myrna Siegal, the Ethics Counsel, and to Benjamin Greenspoon, counsel of record in this action who assisted Siegal in the Ethics Inquiry regarding plaintiff's allegations. The subpoenas *duces tecum* request the same documents in the Ethics file discussed above, and defendant asserts the same privileges with respect to this testimony as it did with respect to the Ethics File, namely the deliberative process, attorney work product, and self-evaluative privileges.

 Clearly, the documents protected from production by the deliberative process privilege can not be compelled by subpoena. In addition, the testimony of Siegal and Greenspoon regarding the Ethics Inquiry itself is protected by the deliberative process privilege, as discussed previously in relation to the Ethics File. Siegal and Greenspoon do not have personal knowledge of the facts underlying the Inquiry, and plaintiff has ample opportunity to obtain these facts from the witnesses who gave information to Siegal and Greenspoon, as well as from the factual materials in the Ethics File. Deposing Siegal and Greenspoon would not add to the facts and also may violate the privilege associated with their investigation of plaintiff's allegations.[9] Therefore, we quash the deposition subpoenas *duces tecum* issued to Siegal and Greenspoon because the documents and their testimony are protected by the deliberative process privilege.

An order consistent with the foregoing has been entered this day.

### ORDER

Upon consideration of defendant's motion to compel, plaintiff's motion to compel, defendant's motion to quash, the accompanying memoranda of points and authorities, and the entire record herein, and for the reasons set out in the memorandum opinion, it is by the court this 20th day of March, 1987,

ORDERED that defendant's motion to compel is granted in part and denied in part as follows:

1. defendant's motion to compel production of so-called "Arrival/Departure Logs" is denied;

2. defendant's motion to compel production of plaintiff's medical records from 1975 to present is denied;

3. defendant's motion to compel answers to interrogatories ## 52 and 76 is denied;

4. defendant's motion to compel more complete answers to interrogatories ## 32(c) and 33(c) is granted. Plaintiff shall respond within ten (10) days of the date of this order, and it is

ORDERED that plaintiff's motion to compel is granted in part and denied in part as follows:

1. plaintiff's motion to compel production of the Ethics File is denied, except that defendant shall produce materials in files ## 6, 9, 10, 11, 12, 15, 18, 21 and 22 properly redacted to eliminate all handwritten notes, recommendations, opinions or conclusions, said production to be within ten (10) days of the date of this order;

2. plaintiff's motion to produce documents relating to the closing of the WRO is denied, subject to defendant's supplying, within ten (10) days, a more accurate index of the withheld documents protected by privilege;

---

**9.** It is not necessary to stress the fact that it is generally inappropriate to depose opposing counsel of record who lack personal knowledge of the facts. Mr. Greenspoon is such a person.

3. plaintiff's motion to compel production of EEO draft decisions, the EEO complaint, and "personal" files held by third parties is denied;

4. plaintiff's motion to compel production of documents responsive to requests ## 13, 20, 34 and 35 is granted, and is denied as to ## 30 and 36. Defendant shall respond within ten (10) days of the date of this order;

5. plaintiff's motion to compel production of documents responsive to requests ## 19, 20 and 21 is denied, and it is

FURTHER ORDERED that defendant's motion to quash deposition subpoenas *duces tecum* directed to Myrna Siegal and Benjamin Greenspoon is granted.