**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 2782,**

**Edward V. Hanlon, and Ruth A. Sanders Hanlon, Appellants,**

v.

**U.S. DEPARTMENT OF COMMERCE.**

No. 86–5390.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 31, 1980.

Decided July 13, 1990.

---

Edward V. Hanlon, Seabrook, Md., for appellants. Ruth A. Sanders Hanlon, Baltimore, Md., also entered an appearance, for appellants.

Michael J. Ryan, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates, and R. Craig Lawrence, Asst. U.S.

Attys., Washington, D.C., were on the brief, for appellee.

Before WALD, Chief Judge, D.H. GINSBURG, Circuit Judge, and GESELL, District Judge.*

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

This appeal arises from an attempt by Local 2782 of the American Federation of Government Employees to obtain access, under the Freedom of Information Act, 5 U.S.C. § 552, to records documenting the promotion practices of the Census Bureau, a unit of the Department of Commerce. The Department denied its request for these documents, and the Union brought suit in district court. When the court had entered summary judgment for the Department, *AFGE v. United States Dep't of Commerce*, 632 F.Supp. 1272 (D.D.C.1986), the Union decided not to pursue the matter any further, but certain employees of the Census Bureau who are members of Local 2782 intervened for the purpose of taking this appeal.

## I. BACKGROUND

The AFGE, and the appellants personally, have filed numerous grievances with the Population Division of the Census Bureau and with the Census Bureau itself, alleging that the Bureau has violated its own Merit Assignment Program by systematically pre-selecting employees to receive promotions for which other employees should have been allowed to compete. The Bureau rejected these grievances, the last of which was filed in December of 1983, because the grievants failed to produce supporting evidence.

In December 1983, the AFGE filed with the Bureau three separate and somewhat overlapping requests for documents, invoking the FOIA, which provides "any person" with an enforceable right of access to all federal "agency records," except to the ex-

tent that such records fall within one or more of the nine exemptions listed in the Act. The appellants claim that they must have these documents in order to prove that the alleged pre-selection took place.

In Request 1, the AFGE sought access to "seven black covered notebooks situated directly behind the present desk of Barbara Glass, Administrative Office, Population Division," which it believed to contain official government forms, known as "SF–52s," that the Division uses in order to initiate requests for personnel actions, such as promotions; handwritten indices; and memoranda recommending particular Division employees for promotions to positions that are supposed to be filled competitively. In Request 2, the AFGE sought "all records, notes, and memoranda written between January 1, 1978," and December 2, 1983, recommending a Division employee for promotion. Finally, in Request 3, the AFGE sought

A. Inspection of *every* chronological office file and correspondence file, internal and external, for every branch office, staff office, assistant division chief office, division chief office, assistant director's office, deputy director's office, and director's office;

B. Inspection of *every* division or staff administrative office file in the Bureau which records, catalogues, or stores SF–52s or stores promotion recommendation memos, or both; and

C. Inspection of *every* memo recommending promotion of *any* employee during FY 82 and FY 83 found or known to any branch chief or higher level supervisor employed at the Bureau.

(Emphases in original.)

The Bureau denied all three requests in their entirety. On appeal, the Department of Commerce upheld the Bureau's decision except with respect to Request 3C, but conditioned inspection of documents responsive to that request upon the Union's payment of a search fee of $3,560. With

---

* United States District Judge for the District of Columbia, sitting by designation pursuant to 28

U.S.C. § 292(a).

respect to Requests 1 and 2, the Department relied upon the deliberative process privilege of Exemption 5 to the FOIA, which covers "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency"; and upon Exemption 6, which covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(5), (6). The Department maintained that Requests 3A and 3B did not "reasonably describe[ ]" the documents that the Union was seeking, as required by 5 U.S.C. § 552(a)(3), and that those requests would impose an undue burden upon the Bureau, which would have "to search virtually every file contained in over 356 branch and division offices, up to and including the director's office." (The Department did not invoke Exemption 5 with respect to Request 3B, although it appears to seek access to the same types of documents as do Requests 1 and 2.)

The Union then sued the Department of Commerce in district court, challenging the denials and alleging that the search fee was unreasonable in amount and imposed in bad faith. In its answer to the complaint, the Government rested upon the same grounds that the Department had given in deciding the Union's administrative appeal. In its subsequent motion for summary judgment, however, the Government introduced two additional justifications for its refusal to release the documents described in Requests 1 and 2. It claimed, first, that the handwritten indices contained in the seven notebooks are not "agency records" within the coverage of the FOIA, "having been created by an enterprising employee ... on her own initiative and for her own personal convenience," 632 F.Supp. at 1277; and second, that all the documents described in Requests 1 and 2 are covered by Exemption 2, as matters "related solely to the internal personnel rules and practices of an agency," 5 U.S.C. § 552(b)(2), that is to say, internal agency matters in which the public "could not reasonably be expected to have an interest," *see Department of the Air*

*Force v. Rose*, 425 U.S. 352, 369–70, 96 S.Ct. 1592, 1603, 48 L.Ed.2d 11 (1976). Finally, in its cross-motion for summary judgment, the Union asserted that it is entitled to waiver of the $3,560 search fee because the information will primarily benefit the general public. *See* 5 U.S.C. § 552(a)(4)(A).

With respect to Requests 1 and 2, the district court granted the Government's motion for summary judgment solely upon the basis of Exemption 5. 632 F.Supp. at 1276. With respect to Request 3, the court granted summary judgment for the Government on the ground that parts A and B would impose too great a burden upon the Bureau to qualify as "reasonably describing" the records requested, and, with regard to part C, that a search fee of $3,560 was reasonable because it represented the estimated cost of a professional employee searching the 356 offices of the Census Bureau for an average of one hour each at an hourly rate of $10. The court rejected the Union's argument for waiver of the fee on the ground that the Union had given insufficient "reason to suppose that the corruption suspected,"—*i.e.*, preselection of employees to receive promotions—"will be found." *Id.* at 1278. Appellants challenge each of these conclusions.

## II. ANALYSIS

*Liminally.* As a threshold matter, appellants argue that the Government may not invoke Exemption 2, nor argue that the handwritten logs described in Request 1 do not constitute "agency records" within the meaning of the FOIA, because it did not rely upon those grounds in its answer to the complaint. (Nor, we have seen, had it done so in the administrative proceedings.) The Government responds broadly that it "is not required to plead its claims [sic] in its answer," citing *Berry v. Department of Justice*, 612 F.Supp. 45 (D.Ariz.1985) (where Government's answer had asserted only that complaint failed to state claim under FOIA, district court had dismissed case, and court of appeals had reversed, Government may on remand raise exemption defense).

We do not have to resolve this question today, however, for as detailed below, we hold that the documents described in Requests 1 and 2 are exempt from disclosure by reason of the deliberative process privilege found in Exemption 5. For the same reason, we do not find it necessary to address the applicability of Exemption 6, which the agency has asserted from the outset as a ground for denying Requests 1 and 2.

*Requests 1 and 2.* Exemption 5 authorizes an agency to withhold from disclosure agency records that would not be discoverable "in litigation with the agency," including information within the "deliberative process" privilege of the Executive Branch. *See EPA v. Mink,* 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). This privilege is intended to protect the ability of government decisionmakers "to engage in that frank exchange of opinions and recommendations necessary to the formulation of policy without being inhibited by fear of later public disclosure." *Paisley v. CIA,* 712 F.2d 686, 698 (D.C.Cir.1983) (citations omitted), *modified on other grounds,* 724 F.2d 201 (D.C.Cir.1984). Lest the privilege outstrip its purpose, it applies only to information that is both " 'predecisional'—[that] was generated *before* the adoption of an agency policy—and ... 'deliberative'—[that] reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. United States Dep't of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980) (emphasis in original).

■ The appellants contend that the documents described in Requests 1 and 2 are not within the scope of Exemption 5 because they "would ... be available by law to a party other than an agency engaged in litigation with the agency." They refer us specifically to litigation under Title VII of the Civil Rights Act of 1964, which, as they point out, has been extended to include the Government in its capacity as an employer. The cases upon which the appellants rely to establish the discoverability of promotion recommendation memoranda and the like in Title VII litigation all involve the documents of the private party, however, not documents internal to an agency of the Government. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Franks v. Bowman Transp. Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Rowe v. General Motors Corp.,* 457 F.2d 348 (5th Cir.1972). They do not, therefore, establish the availability of SF–52s or other promotion-related memoranda in the only class of litigation made relevant by the FOIA. Indeed, the only relevant case of which we are aware unequivocally upholds the privilege of the Government, in defending a Title VII action, to withhold internal memoranda that would reveal an agency's pre-decisional deliberations. *See Broderick v. Shad,* 117 F.R.D. 306 (D.D.C. 1987). Of course, that privilege may be overcome if the Title VII plaintiff makes a showing of "particularized need," *see Mead Data Central v. United States Dept. of Air Force,* 566 F.2d 242, 252 n. 14 (D.C.Cir. 1977). The court does not, however, consider the need of the requester in a suit under the FOIA, *id.* That SF–52s or other promotion-related memoranda might be discoverable upon an adequate showing in litigation under Title VII, therefore, does not imply that they are discoverable in a FOIA case.

■ More narrowly, the appellants argue that the particular documents sought in Requests 1 and 2, although predecisional, are not deliberative because they "evince [nothing of an] internal debate on policy options," so that their disclosure would not reveal "the give-and-take of the consultative process." *Coastal States,* 617 F.2d at 866. Specifically, they claim that the SF–52s reveal only the position to be filled, the organizational unit in which it resides, the vacancy number, and the handwritten name of the allegedly pre-selected employee, without discussion of the employee's qualifications or any other comment on the recommendation; that the indices at the front of the seven notebooks are mere "bookkeeping records" reflecting "no internal debate on policy options"; and, in still more conclusory terms, that the promotion recommendation memoranda do

not reveal "the give-and-take of the consultative process."

The appellants' insistence that their requests would cause no intrusion into agency deliberations does not bear scrutiny. An internal agency communication that makes a recommendation or expresses an opinion necessarily reflects the give-and-take of the agency's deliberative process. *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C.Cir.1975). As we said in *Coastal States*, 617 F.2d at 866:

> The exemption ... covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position.... We also ask whether the document is recommendatory in nature or is a draft of what will become a final document.

Under these criteria, the records described in Requests 1 and 2 are surely within Exemption 5. The indices to the seven notebooks reveal the names of some Population Division employees whose promotion was recommended at one level but not approved by the ultimate decisionmaker. Similarly, the memoranda and the SF–52s recommended personnel actions to which the Bureau was not yet committed. In fact, the district court found that an SF–52 originating with the Population Division might undergo significant changes before a final decision is taken. The Personnel Office must determine "whether the position is needed at all, at what cost and from whose budget, what the successful applicant will be expected to do, and to whom he or she will report, as well as who should be chosen to fill it." 632 F.Supp. at 1277. The job description and the statement of necessary skills and qualifications,

which reflect the opinions and subjective evaluations of the Division employee who initiates the action, are open to revision as the proposal passes up the chain of command. Rather than reflecting a settled "agency position," therefore, these documents record a dialogue within the agency. They are deliberative as well as pre-decisional, and hence exempt from the disclosure requirement of the FOIA.\*\* By way of contrast, we note that the Bureau is willing to release the final version of its SF–52s, 632 F.Supp. at 1276 n. 4; those documents reflect the "agency position," the ultimate decision coming out of the deliberative process that the appellants seek to penetrate.

■ In order to come within the exception to the deliberative process privilege for tentative positions that are ultimately adopted by the agency, *see Coastal States*, 617 F.2d at 866, the appellants belatedly, indeed in the brief on this appeal, offered to narrow their request to include only those of the requested records that relate to Division employees who were actually promoted as proposed. They also suggested that evaluative comments, if any, could be deleted from the SF–52s. (We note that the sample blank SF–52 form submitted for the record contains a large section reserved for "Remarks," presumably inviting just such evaluative commentary.) It is our office, however, to review the decision of the district court in the case that the appellants, having duly exhausted their administrative remedies, there presented for decision; it is distinctly not our role to pass *de novo* upon a request for disclosure that is narrower than the request that was presented to the agency, and we decline to do so.

■ *Requests 3A and 3B.* Request 3A would require the Bureau to locate "every chronological office file and correspondent file, internal and external, for every branch office, staff office [etc.]" Request

---

\*\* The appellants refer us to two FOIA cases in which a federal agency was required to release promotion-related materials not unlike those at issue here. *See Core v. United States Postal Serv.*, 730 F.2d 946 (4th Cir.1984); *Celmins v.* *United States Dep't of Treasury*, 457 F.Supp. 13 (D.D.C.1977). In neither case, however, did the Government invoke Exemption 5; the courts therefore had no occasion to address the applicability *vel non* of that exemption.

3B is similarly broad. As such, neither request "reasonably describes" a class of documents subject to disclosure, as required by 5 U.S.C. § 552(a)(3)(A). An agency need not honor a request that requires "an unreasonably burdensome search." *Goland v. CIA*, 607 F.2d 339, 353 (D.C.Cir. 1978). While Requests 3A and 3B might identify the documents requested with sufficient precision to enable the agency to identify them—we do not think that is in dispute here—it is clear that these requests are so broad as to impose an unreasonable burden upon the agency. They would require the agency to locate, review, redact, and arrange for inspection a vast quantity of material. The unreasonableness of the attendant burden is only more obvious when one realizes that it is largely unnecessary to the appellants' purpose; Request 3A is in no way tied to their expressed concern with promotion-related materials, and Request 3B entails inspection of the entirety of every file in which any such material can be found, rather than merely a copy of the relevant documents. For this reason we affirm the district court's decision that the Bureau need not comply with those requests.

 *Request 3C.* With respect to Request 3C, the appellants argue that waiver of the $3,560 search fee is required "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii). We do not reach the question of the appellants' entitlement to waiver of the fee, however, as there is nothing in the record to indicate that they requested it during the administrative proceedings before the agency.

As a general proposition, "a party seeking review of agency action [must] exhaust its administrative remedies before seeking judicial review." *NRDC v. United States Environmental Protection Agency*, 824 F.2d 1146, 1150 (D.C.Cir.1987) (en banc). We have specifically held that "[e]xhaustion of [administrative] remedies is required under the Freedom of Information Act before a party can seek judicial review." *Stebbins v. Nationwide Mutual Insurance Co.*, 757 F.2d 364, 366 (D.C.Cir. 1985). Moreover, the FOIA specifically provides that judicial review of a decision regarding waiver of fees, although *de novo* in the district court, "shall be limited to the record before the agency." 5 U.S.C. § 552(a)(4)(A)(vii). Since that record does not include a request to waive the search fee required by the Bureau, we decline to consider the appellants' claimed entitlement thereto.

### III. CONCLUSION

For the foregoing reasons the district court's decision is in all respects

*Affirmed.*