Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 21, 2002       Decided February 7, 2003

No. 01-5320

GLENN P. LACEDRA,
APPELLANT

v.

EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 99cv00273)

———

*Elaine J. Goldenberg,* appointed by the court, argued the cause as amicus curiae on the side of appellant. With her on the briefs were *Deanne E. Maynard* and *David W. DeBruin.*

*Glenn P. LaCedra* filed pro se briefs.

*Michael J. Ryan,* Assistant U.S. Attorney, argued the cause for appellee. On the brief were *Roscoe C. Howard, Jr.,*

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

U.S. Attorney, *R. Craig Lawrence*, and *Jane M. Lyons*, Assistant U.S. Attorneys.

Before: GINSBURG, *Chief Judge*, HENDERSON, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: Glenn LaCedra wrote a letter to the Executive Office for United States Attorneys requesting documents pursuant to the Freedom of Information Act. He first asked generally for "all documents pertaining to" the criminal case against him; he then enumerated certain specifically requested items. The EOUSA construed the letter to request only the specifically enumerated items and therefore produced only 14 of the approximately 6,000 pages of documents it had concerning LaCedra. The district court, determining that the EOUSA adequately responded to LaCedra's request, granted summary judgment for the Agency. We hold the EOUSA's interpretation of LaCedra's request was not reasonable. Accordingly, we reverse the judgment of, and remand the case to, the district court for further proceedings.

## I.  Background

LaCedra was convicted in 1996 in the United States District Court for the District of Massachusetts. In 1998 he sent a pro se FOIA request to the U.S. Attorney for the District of Massachusetts. The request read in pertinent part as follows:

> I wish to obtain a copy of all documents pertaining to my case that was prosecuted by your office, entitled <u>United States vs. Glenn P. LaCedra, 96–10074 RCL</u>, Specifically I am requesting the following below; Documents and Information on
>
> 1.  Any and all inducements, and rewards offered to the chief government witnesses <u>Susan Yodlin and Jennifer Brown</u>, including Government provided beeper service, cellular phone service and fees paid in my case for any, and all information or for testifying against me.

2. All scientific fingerprinting results from the inside of the black electrical tape, that was attached to the device, and any documents concerning the known or unknown identities of such.

Having waited almost a year without receiving any documents, LaCedra filed a Petition for Writ of Mandamus in the United States District Court for the District of Columbia. LaCedra asked the court to compel the EOUSA to produce "[a]ll information in [the EOUSA's] files from 1995 to present concerning [him] in any criminal investigation which includes Case No. 96–10074–RCL entitled the United States vs. Glenn P. LaCedra (District of Massachusetts) and all the other requested information sought." Shortly thereafter the EOUSA provided LaCedra with 14 pages of documents, including one it had redacted pursuant to Exemption 7(C) of the FOIA.

The EOUSA then twice moved for and the district court twice denied summary judgment. When the Agency filed a third such motion, it attached the declaration of Maryellen Barrett, a FOIA official in the office of the U.S. Attorney for the District of Massachusetts. In her declaration Barrett described LaCedra's letter as requesting only the specifically enumerated items. She also described in detail the steps she had taken to locate documents responsive to that request. Along the way she stated that LaCedra's criminal case file consisted of "three boxes of material," of which only the 14 pages already produced were responsive to LaCedra's request. This LaCedra took as an admission that the EOUSA had not produced all the documents he had requested.

Responding to the district court's concern that LaCedra had "raise[d] valid questions about the contents of [the] three boxes of documents," the EOUSA argued that "the plaintiff's original request for information did not include all of the documents contained in . . . his criminal case file," and accused LaCedra of trying to "expand his request." According to the EOUSA, LaCedra's general request for "all documents pertaining to my case that was prosecuted by your office" merely "identif[ies] the location where the documents re-

quested ... will be found," whereas his enumeration of specific items "describe[s] exactly what is being requested."

The district court concluded that the EOUSA's understanding of LaCedra's letter as requesting only the specifically enumerated items was "not unreasonable." Accordingly, the court granted the EOUSA's third motion for summary judgment.

LaCedra timely appealed pro se to this court, and we appointed an amicus curiae to present arguments in support of his position. We review the decision of the Agency *de novo*. *See* 5 U.S.C. § 552(a)(4)(B) (district court reviews agency *de novo*); *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (circuit court reviews summary judgment *de novo* in FOIA as in other cases).

## II. Analysis

The Freedom of Information Act, 5 U.S.C. § 552, requires federal agencies to grant "any request for records which ... reasonably describes such records," § 552(a)(3)(A), subject to certain specified exemptions. As the EOUSA interprets LaCedra's request, it "reasonably describes" only the items that it specifically enumerates, whereas LaCedra argues that the EOUSA should have construed his request more broadly.

Initially we note the EOUSA's suggestion on brief that, as a prudential matter, we decline to hear this case because LaCedra then had pending before it a second, related FOIA request that might provide LaCedra with all the relief he was seeking here. Before the oral argument in this case, however, the EOUSA had finished processing the second request without producing any additional documents. As a result, we express our appreciation for, but decline the Agency's suggestion.

And so to the issue. LaCedra points out that his original letter of request plainly sought "all documents pertaining to" his criminal case. The EOUSA's interpretation of his request, he claims, reads the just-quoted phrase out of the

letter. LaCedra maintains that his subsequent enumeration of specific items does not limit his initial request but only indicates a subset of the larger class of documents in which he is especially interested. He also argues that, to the extent the scope of his request is ambiguous, (1) the EOUSA was obliged by our decision in *Nation Magazine v. United States Customs Service*, 71 F.3d 885 (1995), to interpret the request liberally in favor of disclosure; and (2) his petition for mandamus, which the EOUSA received before it began its search, clarified the request. *See Truitt v. Dep't of State*, 897 F.2d 540, 544 (D.C. Cir. 1990).

For its part, the EOUSA argues that it is LaCedra's interpretation of the request that renders a portion of it surplusage. Specifically, if we interpret the letter first to seek "all documents," then there is no way to give meaning to the latter part in which LaCedra "[s]pecifically . . . request[s]" certain enumerated documents. On the EOUSA's proffered interpretation, "the first two sentences of . . . LaCedra's request identified the location where the requested documents would be found, and the latter two sentences described exactly what was being requested."

To be sure, LaCedra's request is not a model of clarity. The first portion, "I wish to obtain a copy of all documents pertaining to my case," is in considerable tension with the second, "Specifically I am requesting the following below." Nevertheless, LaCedra's request is reasonably susceptible to the broader reading. The drafter of a FOIA request might reasonably seek all of a certain set of documents while nonetheless evincing a heightened interest in a specific subset thereof. We think it improbable, however, that a person who wanted only the subset would draft a request that, like LaCedra's, first asks for the full set. The EOUSA's interpretation — that the request for "all documents pertaining to my case that was prosecuted by your office" identifies the location where the subset of documents may be found — is simply implausible. In view of the Government's obligation under the law of this circuit "to construe a FOIA request liberally," *Nation Magazine*, 71 F.3d at 890, we think it is also wrong.

Citing *Maydak v. United States Department of Justice*, 218 F.3d 760 (D.C. Cir. 2000), the amicus urges us to hold the EOUSA's interpretation is so unreasonable that, upon remand to the district court, the Agency should not be allowed to invoke any of the exemptions in the FOIA. In *Maydak* the Agency had invoked one exemption to support non-disclosure of certain information; on appeal it abandoned that exemption and asked the court to remand the case to the district court so the Agency could there advance other exemptions. We held that an agency could not raise FOIA exemptions seriatim and ordered the Agency to produce all the relevant documents without regard to any belatedly asserted exemptions.

Nothing in *Maydak* requires an agency to invoke any exemption applicable to a record the agency in good faith believes has not been requested. Of course, we can imagine a case in which the agency's interpretation of a FOIA request is so unreasonable as to raise the inference that the agency is not acting in good faith. What we would do in such a case we need not decide today. For in this case the EOUSA's interpretation, although erroneous, was at least colorable. Not every error bespeaks a knave.

## III. Conclusion

For the foregoing reasons we reverse the judgment of the district court. The case is remanded to that court for further proceedings consistent with this opinion.

*So ordered.*