REPUBLICAN NATIONAL
COMMITTEE,
Plaintiff,

v.

DEPARTMENT OF STATE, Defendant.

Civil Action No. 16–489 (BAH)

United States District Court,
District of Columbia.

Signed 11/22/2016

Brian D. Boone, Alston & Bird LLP, Charlotte, NC, David Andrew Hatchett, Alston & Bird, L.L.P., Atlanta, GA, Edward T. Kang, Kelley C. Barnaby, Alston & Bird LLP, Washington, DC, for Plaintiff.

Carol Federighi, U.S. Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION

Chief Judge Beryl A. Howell

The plaintiff, the Republican National Committee ("RNC"), submitted a request, under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the United States Department of State ("State Department"), on December 4, 2015, for "visitor logs or other records detailing any visitors" to Secretary of State Hillary Clinton's "formal quarters and/or personal office located in the Harry S. Truman building" during her tenure in that position. Pl.'s Mot. Partial Summ. J. ("Pl.'s Mot."), Ex. A ("Visitor Records Request") at 1, ECF No. 19–1. Pending before the Court

are cross-motions for partial summary judgment to resolve the parties' dispute whether the State Department conducted an adequate search for responsive records due to the agency's narrow construction of the scope of the request. For the reasons set forth below, the RNC's motion for partial summary judgment is granted and State's motion for partial summary judgment is denied.

## I. BACKGROUND

Upon receipt and evaluation of the Visitor Records Request, the State Department's Office of Information Programs and Services ("IPS"), which is initially responsible for responding to FOIA requests to the agency, determined "that the Department components reasonably likely to maintain responsive records were the Executive Secretariat and the Bureau of Diplomatic Security." Decl. of Eric F. Stein, Acting Co–Director of IPS ("Stein Decl.") ¶ 8, ECF No. 23–5. The Executive Secretariat is "responsible for coordinating the work of the [State] Department internally" and "for coordinating search responses for the Office of the Secretary of State" and other senior State officials. Id. ¶ 9. The agency concluded that the Executive Secretariat "did not maintain any visitor logs, or other records, detailing visitors to Secretary Clinton's formal quarters or personal office," and thus had no responsive records. Id. ¶ 10.

The second agency component subject to search, the Bureau of Diplomatic Security ("DS"), designs and maintains security programs for every diplomatic mission world-wide and, domestically, is responsible for, inter alia, managing "oversight of building access control, Department controlled building passes, and special events

security at all domestic Department facilities, including the Harry S. Truman ("HST") building; as well as protection of the Secretary of State and high-ranking foreign dignitaries and officials visiting the United States." Id. ¶ 11. DS records are "decentralized" and the agency determined that only two DS components were reasonably likely to maintain responsive records: the Secretary's Protective Detail and the Office of Domestic Facilities Protection, neither of which maintained "visitor logs, or other records, detailing visitors to Secretary Clinton's formal quarters or personal office." Id. ¶¶ 12–14.

In addition to these two DS components, the agency searched the Visitor Access Control System (Domestic) ("VACS–D") database, which "allows DS staff to pre-register individuals, groups, and non-U.S. citizens requesting entrance into the HST Building," including visitors to the "7th floor," where the Secretary's and "a number of other offices" are located. Id. ¶ 15. Since "none of the entries in the database specifically identified the visitors' destination to be the Secretary of State's formal quarters or personal office, nor did they contain further details about the purpose of the visit," the agency concluded that no responsive records were located from this additional search. Id.

When no records were produced, the RNC commenced this suit on March 14, 2016, challenging the State Department's lack of response to the Visitor Records Request, as well as three other FOIA requests submitted by the RNC seeking records "that may reflect blurred lines between the State Department and Clinton's private organizations." Compl. at 1, ECF No. 1.[1]

---

1. At the RNC's request, separate briefing and scheduling was ordered for the Visitor Records Request. See Joint Scheduling Report,

August 29, 2016, ¶¶ 11–12, ECF No. 20. The three other FOIA requests raised in the complaint seek records "relating to applications

About two months later, in May 2016, the State Department's Office of the Inspector General ("OIG") released a report that. "mentioned an Outlook calendar that Secretary Clinton's staff used." Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem.") at 2–3, ECF No. 19. This OIG reference prompted the. RNC to ask the State Department whether a search had been conducted "for Outlook and other calendar entries" in response to the Visitor Records Request. Id. at 1 (citing Pl.'s Mot. Ex. B (E-mail from RNC Counsel to Counsel for State Department (May 26, 2016)), ECF No. 19-2). The agency responded that no search of any schedules or calendars with respect to Secretary. Clinton had been performed because "[t]he schedules detail *meetings*, not visitors, and provide only indirect evidence of which individuals might have been in the vicinity of the Secretary's personal office on a particular day." Pl.'s Mot. Ex. B (Email from counsel for the State Department to RNC counsel (June 16, 2016)), at 1 Further, the State Department indicated that an interpretation of the request "to extend to any records 'evidencing' visitors to Secretary Clinton's office" would "go[ ] beyond the terms of your request as phrased and, in addition, would be over-broad and burdensome." Id. [2] Notwithstanding its position that the Visitor Records Request did not cover the Outlook calendars or schedules, the State Department offered to provide the RNC "retired schedules that were produced" in an unrelated case, *Associated Press v. U.S. Department of State*, Civil Action No. 15–345 (D.D.C.), but conditioned. such production on the RNC accepting these schedules in satisfaction of its request. Pl.'s Mem. at 3–4 (citing Pl.'s Mot. Ex. B (Email from counsel for the State Department to RNC counsel (June 16, 2016))). RNC refused the offer.

The parties' cross-motions for partial summary judgment as to the Visitor Records Request are now ripe for resolution.

## II. LEGAL STANDARDS

 Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the "absence of a genuine issue of

---

for, as well as approvals of, invitations to any function at a U.S. Department of State Diplomatic Reception Room...and all guest lists for functions held at a U.S. Department of State Diplomatic Reception Room," Compl. ¶ 23; "relating to the. solicitation and/or receipt of donations through the 'Patrons of Diplomacy' program," id.¶ 24; and "concerning Hillary Clinton and her senior staffers' 'attendance at, completion of, or waiver of the requirement to complete, the online ethics training" for State Department employees, id. ¶ 25. The State Department is currently producing documents in response to the Diplomatic Reception Room Request and is anticipated to continue production until February 1, 2017. *See* Minute Order, dated Sept. 9, 2016. The RNC apparently has no further dispute with the State Department's response to the requests relating to the Patrons of Diplomacy program or online ethics training. *See* J. Sched. Rep. (June 27, 2016) ¶¶ 8, 9, 11 (noting that both the Patrons of Diplomacy Request and online ethics training request have been "closed out" by the State Department).

2. Although the State Department's suggested that adoption of the RNC's interpretation of the Visitor Records Request would make this request burdensome to process, no such argument is asserted by the agency in its briefing. *See generally* Def.'s Mem. Supp. Cross–Mot. Partial Summ. J. & Opp'n ("Def.'s Opp'n") at 8–10, ECF No. 23–2. Thus, this argument is waived. *See Evans v. Sebelius*, 716 F.3d 617, 619 (D.C. Cir. 2013) (noting that arguments not raised in briefs are waived (citing *Ark Las Vegas Rest. Corp. v. NLRB*, 334 F.3d 99, 108 n.4 (D.C. Cir. 2003)).

material fact" in dispute, while the non-moving party must present specific facts supported by materials in the record that would be admissible at trial and that could enable a reasonable jury to find in its favor. *See Anderson v. Liberty Lobby, Inc.* ("*Liberty Lobby*"), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allen v. Johnson,* 795 F.3d 34, 38 (D.C. Cir. 2015) (noting that, on summary judgment, the appropriate inquiry is "whether, on the evidence so viewed, 'a reasonable jury could return a verdict for the nonmoving party'" (quoting *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505)). "[T]hese general standards under [R]ule 56 apply with equal force in the FOIA context," *Washington Post Co. v. U.S. Dep't of Health & Human Servs.,* 865 F.2d 320, 325 (D.C. Cir. 1989), and, as the D.C. Circuit has observed, "the vast majority of FOIA cases can be resolved on summary judgment,'" *Brayton v. Office of the U.S. Trade Representative,* 641 F.3d 521, 527–28 (D.C. Cir. 2011).

■ █ The FOIA was enacted "to promote the 'broad disclosure of Government records' by generally requiring federal agencies to make their records available to the public on request," *DiBacco v. U.S. Army,* 795 F.3d 178, 183 (D.C. Cir. 2015) (quoting *Dep't of Justice v. Julian,* 486 U.S. 1, 8, 108 (S.Ct. 1606, 100 L.Ed.2d 1 1988)), unless the information is exempt "under clearly delineated statutory language," *Dep't of the Air Force v. Rose,* 425 U.S. 352, 360–61, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). To fulfill the FOIA's "strong presumption in favor of disclosure," *U.S. Dep't of State v. Ray,* 502 U.S. 164, 173, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991), agencies are statutorily mandated to "make . . . records promptly available to any person," who submits a request that "(i) reasonably describes such records and (ii) is made in

accordance with [the agency's] published rules." 5 U.S.C. § 552(a)(3)(A).

█ The plain language of the FOIA makes clear that the agency's obligation to search for responsive records is triggered when the records sought are "reasonably describe[d]." *Id; see also Assassination Archives & Research Ctr. v. CIA,* 334 F.3d 55, 57 (D.C. Cir. 2003) (tying agency obligation to FOIA statutory language). In evaluating the description of the records sought and defining the scope of the concomitant search, an agency "ha[s] 'a duty to construe a FOIA request liberally.'" *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health* ("*PETA*"), 745 F.3d 535, 540 (D.C. Cir. 2014) (quoting *Nation Magazine v. U.S. Customs Serv.,* 71 F.3d 885, 890 (D.C. Cir. 1995)). Nevertheless, "[a]n agency need not honor a request that requires 'an unreasonably burdensome search,'" including when the documents requested are not described with "sufficient precision to enable the agency to identify them," resulting in "requests . . . so broad as to impose an unreasonable burden upon the agency." *Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Commerce,* 907 F.2d 203, 209 (D.C. Cir. 1990) (quoting *Goland v. CIA,* 607 F.2d 339, 353 (D.C. Cir. 1978)).

█ Notably, the failure of an agency to turn up responsive documents in its search "does not alone render a search inadequate[;]" "[r]ather, the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency,* 315 F.3d 311, 315 (D.C. Cir. 2003). To succeed on a summary judgment motion, an agency "must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Morley v. CIA,* 508 F.3d 1108, 1114 (D.C. Cir. 2007)

(quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). The agency may do so "by submitting reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006); *see also Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (instructing that to demonstrate an adequate search, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested").

## III. DISCUSSION

■ The RNC raises two interrelated challenges to the State Department's response to the Visitor Records Request. Specifically, the RNC contends that the agency too narrowly construed the scope of the request, leading inexorably to an inadequate search for responsive records. Pl.'s Mem. at 5; Pl.'s Reply Mem. at 2, ECF No. 25. For the reasons discussed below, the Court agrees.

### A. The Visitor Records Request

The RNC posits that the Visitor Records Request was not limited to "visitor logs," but also covered more broadly "other records," a phrase included in the request, to the extent that any "other records" reflect visitors to the Secretary's personal office. Since Outlook calendars and schedules may contain information about individuals, who both planned to attend and actually attended meetings, as visitors to the Secretary's office, the RNC reasons that such records fall within the scope of the request. Pl.'s Mem. at 5. The State Department disagrees, construing the reference in the request to "visitor logs" as narrowly meaning only those persons who actually attended meetings in the Secretary's office. According to the agency, "logs" are meant to record attendees that actually come to meetings, while calendars only "indirectly provide some of the information sought by plaintiff." Def.'s Opp'n", at 8–9, ECF No. 23–2. The agency dismisses any contention that the phrase "other records" has any broader meaning than "visitor logs," but insists that this more general phrase must be limited by the more specific reference. *Id.* at 9–10. Consequently, in the agency's view, the RNC's reliance on the general phrase is simply an attempt to shoehorn a new request into the language of the current Visitor Records Request. *Id.* at 8–10. The State Department's position is untenable for at least three reasons.

■ First, while an agency is "bound to read [a request] as drafted, not as either agency officials or [requestors] might wish it was drafted," *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir.1984), as noted, *supra* in Part II, an agency "ha[s] a duty to construe a FOIA request liberally," *PETA*, 745 F.3d at 540. The State Department's cramped construction of the Visitor Records Request essentially ignores the phrase "other records" and this unilateral narrowing of the request runs counter to the agency's obligation to construe the request reasonably and liberally.

In analogous circumstances, the D.C. Circuit has not hesitated to find such a narrow construction of a FOIA request, to be "simply implausible," even when the request at issue was "not a model of clarity." *LaCedra v. Exec. Office for U.S. Att'ys*, 317 F.3d 345, 348 (D.C. Cir. 2003). In *LaCedra*, for example, a prisoner requested "all documents pertaining to" the criminal case against him, as well as certain enumerated items, but the agency interpreted the request in such a way as to render the "all documents" portion a "surplusage." *Id.* Finding the enumerated

items to be merely "a specific subset" of records in which the requester had "evinc[ed] a heightened interest," the *LaCedra* Court reversed the grant of summary judgment by the District Court to the agency and concluded that limiting the request to the subset was an "improbable" reading of the request, which "reasonably" sought all of the described documents. *Id.* Likewise, here, the State Department may not restrict the FOIA request to an identified subset of records, *i.e.*, "visitor logs," when the request more broadly seeks "other records detailing any visitors to" Secretary Clinton's "formal quarters and/or personal office," over a four-year period.

■ Second, the State Department's acknowledgement that Outlook calendars and schedules are "indirectly" responsive to the Visitor Records Request amounts to a concession that easily resolves this part of the RNC's challenge. The FOIA does not distinguish between "directly" and "indirectly" responsive records, and any responsive record must be produced, unless exempt. Parsing a FOIA request to exclude purportedly "indirectly" responsive records, as the State Department suggests, would undercut the long-standing mandate to agencies to construe FOIA requests liberally.

Finally, the State Department's contention that Outlook calendars and schedules fall outside the scope of the Visitor Records Request because such records reflect only anticipated, rather than actual, attendees at meetings, is colorable but not persuasive under the circumstances. Certainly, the RNC's Visitor Records Request could have been drafted with more clarity to cover scheduled meetings. Yet, many of

the anticipated attendees likely did actually attend the scheduled meetings reflected in the contested records. *See* Def.'s Mem. at 4. Indeed, given the importance of attendance at a scheduled meeting with a public official the stature of the Secretary of State and/or in her office, visitors more than likely kept their scheduled attendance.[3] In this context, the Outlook calendars and schedules for Secretary Clinton can reasonably be expected to elucidate "any visitors to the Secretary of State's formal quarters and/or personal office."

## B. The State Department's Search Was Inadequate

■ The State Department performed a search predicated on its narrow construction of the Visitor Records Request but, in light of the holding *supra*, in Part III.A., the request has a broader scope and, consequently, warrants a more extensive search. Contrary to the State Department's argument, merely because the search performed was consistent with the agency's then-interpretation of the Visitor Records Request does not render the search reasonable. *See* Def.'s Mem. at 9–10. The reasonableness of an agency's search is "based on what the agency knew at [the search's] conclusion rather than what the agency speculated at its inception." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998). When the OIG report referencing Outlook calendars and schedules for Secretary Clinton and her senior staff was brought to the State Department's attention in connection with the FOIA request at issue, the agency was put on notice of the potential existence of

---

**3.** Indeed, the sample Outlook calendar records proffered by the State Department confirm that these records reflect meetings in the Secretary's office, usually with the Secretary, along with anticipated attendees. *See, e.g.,* Def.'s Mem., Ex. A at 1 (listing a number of expected participants in a meeting that was scheduled to take place in the "Secretary's Conference Room").

records subject to the request and was obligated to expand the scope of its search.

■■■■ Although every possible location or record system within an agency's control need not be searched for responsive records, an agency must search those locations "reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. Moreover, an agency is obliged to pursue any "clear and certain" lead concerning the location of potentially responsive records and may not, in good faith, ignore such leads. *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996). Thus, further searches are necessary when an agency is made aware of "additional potentially responsive materials." *Carter, Fullerton & Hayes, LLC v. Fed. Trade Comm'n*, 637 F.Supp.2d 1, 7 (D.D.C. 2009); *see also Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (finding an agency may not ignore "positive indications of overlooked materials").

The record in this case falls short of demonstrating "beyond material doubt" that the State Department "has conducted a search reasonably calculated to uncover all relevant documents.'" *Morley*, 508 F.3d at 1114 (quoting *Weisberg*, 705 F.2d at 1351). Instead, the narrow interpretation given by the agency to the Visitor Records Request improperly limited the scope of the search, rendering the search conducted in this case inadequate. *See, e.g., PETA*, 745 F.3d at 544 (citing "the duty to construe FOIA requests liberally," the court concluded that blanket *Glomar* response was "unwarranted" as request "more broadly" reached other categories of records that did not justify Glomar response and, consequently, "[o]n remand, [the agency] must search for any documents" responsive to broader request); *Rubman v. U.S. Citizenship & Immigration Servs.*, 800 F.3d 381, 384 (7th Cir. 2015) (finding

that agency "failed to conduct an adequate search as required by law when it unilaterally narrowed [requester]'s request," requiring reversal of grant of summary judgment to agency with direction to agency to perform "a responsive search"). As a result, the State Department must "conduct further or additional searches and certainly must supplement the supporting declarations regarding the adequacy of [the] searches." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F.Supp.2d 83, 93 (D.D.C. 2009).

## IV. CONCLUSION

For the foregoing reasons, the RNC is entitled to partial summary judgment on the scope of the Visitor Record Request and the inadequacy of the State Department's search, and the State Department's cross-motion for partial summary judgment is denied. The State Department is directed to conduct an additional search that encompasses the full description of records responsive to the Visitor Records Request.

An order consistent with this Memorandum Opinion will be contemporaneously entered.